**Affirmed and Opinion Filed June 30, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00242-CR

**WILLIAM WAYNE LAUBE, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-81056-2012**

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Lang-Miers
Opinion by Justice Bridges

Appellant William Wayne Laube appeals from his convictions for indecency with a child by contact and indecency with a child by exposure and his accompanying sentences of twenty years and ten years' imprisonment respectively. In three issues, appellant contends: (1) the evidence was legally insufficient to support a finding of guilt for the offense of indecency with a child by exposure; (2) the trial court abused its discretion under rule 404(b) by admitting the extraneous offense testimony of Brian Pervis; and (3) the trial court abused its discretion under rule 403 by admitting the extraneous offense testimony of Brian Pervis. We affirm.

### Background

In late 2009, appellant was living with his sister, Lisa, and her children in Richardson. At one point, Lisa found appellant and her son, N.N., in the playroom. Appellant was lying on the

floor and N.N. was on his knees with his shirt up. When Lisa walked in on them, both appellant and N.N. jumped, and she got a "horrible feeling." N.N., who was six at the time, told her that appellant had "touched [his] pee pee." When Lisa confronted them, N.N. retracted the statement. At the time, Lisa was mourning the sudden loss of her husband and a series of other family deaths and testified she did not want to believe that appellant had touched her son. Instead of calling the police, Lisa rented appellant an apartment for six months and moved her family to Colorado.

Once in Colorado, N.N. was accused of acting out sexually toward a young girl. A five-year-old neighbor who had been playing with N.N. outcried that he had tried to kiss her and groped her. N.N. eventually told a counselor about the playroom incident with appellant, and the counselor called the police. Another forensic interview was conducted,[1] and N.N. said that appellant had touched his "pee pee." Patricia Kelly, the forensic interviewer, testified N.N. stated that appellant told N.N. he needed to "talk to the bees," which meant nothing to N.N. but may have been a reference to the "birds and the bees." Kelly explained offenders sometimes use the ruse of teaching children about sex to gain access to them. Detective Kevin Donahue, an investigator for the Jefferson County Sheriff's Office in Boulder, Colorado, explained N.N. stated appellant had touched his penis under his clothes and "shaked it." N.N. demonstrated with his hand to "simulate sort of a masturbation sort of motion to say that's how [appellant] shaked it." N.N. also wrote that appellant was "noked," which Donahue interpreted as "naked" as he believed N.N. "just didn't finish the A." Kelly also indicated N.N. had written appellant was naked at the time of the incident in question. Kelly explained that N.N. was also upset and

---

[1] A total of three forensic interviews were conducted with N.N. The initial forensic interview centered on N.N.'s alleged behavior toward the little girl, while the subsequent forensic interviews focused on appellant's alleged acts toward N.N.

frustrated that appellant had lied to his mom and told his mom that his pee pee hurt when that was not true.

Detective Jonathan Hay with the Richardson Police Department viewed the forensic interview containing N.N.'s outcry against appellant and obtained an arrest warrant for appellant. While Hay was transporting appellant to jail, Hay testified appellant stated he knew the arrest was in reference to N.N. even though Hay did not mention N.N. at the time of appellant's arrest. Appellant further stated he slept in the nude and that N.N. would come in and pull the covers off of him. Appellant claimed that, on one occasion, N.N. had told him his penis hurt and tried to "forcibly pull" appellant's hands toward N.N.'s penis. Appellant stated N.N. had been acting out sexually and indicated N.N.'s deceased father may have sexually abused him. Detective Darrell Meyer with the Richardson Police Department arrested appellant with Detective Hay. Meyer confirmed that appellant stated the charge must be regarding N.N. and left the impression that it was N.N. who was "coming on" to appellant, making appellant the victim.

N.N. was nine at the time of trial. He testified that, when he was in kindergarten, he went to his playroom to get a toy and appellant "touched [his] pee pee" with his hand. N.N. explained appellant "shaked it" and that appellant's clothes were off. N.N. also said appellant touched him under his clothes. N.N. testified he saw appellant's "pee pee" when appellant was walking toward a stack of movies undressed. N.N. indicated his mom did not see everything, and appellant stopped when she came into the playroom. N.N. said appellant lied to his mom when appellant told Lisa that N.N.'s penis hurt when it did not hurt. N.N. testified appellant told N.N. that he "needed to talk to the bees." N.N. also said he had seen appellant's penis a long time ago and it looked "big."

The State also called Lisa's adult son, Brian Pervis, to testify to an extraneous offense. Prior to his testimony, the trial court gave the following instruction:

You are instructed that if there is any evidence before you in this case regarding the Defendant's having committing an alleged offense or offenses, other than the offense alleged against him in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the Defendant committed such other offense or offenses, if any. And even then, you may only consider the same to rebut the defensive theory in fabrication, if any, in connection with this offense, if any, alleged against him in the indictment and for no other purpose.

Pervis then testified appellant had sexually assaulted him when he was fourteen-years-old. He explained that, when he was staying with his grandparents and his uncle (appellant), he and appellant played truth or dare. Appellant, who was bigger and stronger than Pervis, dared to let him perform oral sex on Pervis. Before Pervis had a chance to say anything, appellant was on top of him. Fourteen years later, when his mother (Lisa) was moving to Richardson, Pervis told her in general terms that appellant had molested him. Pervis further testified appellant was homosexual and had cut out pornographic photos of naked men, penises, and sexual intercourse and glued them onto the outlines of buildings to represent a city. Appellant pasted the images on the two windows above the bedroom in the garage facing towards the street and all around his house.

The State also offered a jail call made by appellant to his mother and, once admitted, played the call for the jury. This Court's review of the call reveals appellant stated his sister, Lisa, had not corroborated the fact that he was nude when she walked in on them. When appellant's mother misunderstood, stating she did not realize N.N. was nude, appellant responded: "What? No, he wasn't." Appellant then added: "I'm talking about the alleged thing." Appellant then indicated N.N. was the one who was acting out sexually, while appellant was the victim.

The jury convicted appellant of both indecency counts, and the trial court assessed appellant's punishment at twenty years' imprisonment for the indecency by contact count and ten years' imprisonment for the indecency by exposure count.

**Analysis**

*Sufficiency*

In his first issue, appellant contends the evidence was legally insufficient to support a finding of guilt for the offense of indecency with a child by exposure. In determining the sufficiency of the evidence, an appellate court is to consider all evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We defer to the factfinder's determinations of the witnesses' credibility and the weight to be given their testimony, because the factfinder is the sole judge of those matters. *See id.* at 326; *Brooks v. State*, 323 S.W.3d 898, 902 (Tex. Crim. App. 2010) (plurality op.).

To find appellant guilty of indecency with a child by exposure, the State was required to prove appellant, with the intent to arouse or gratify the sexual desire of any person, exposed his genitals to a child younger than seventeen, knowing the child is present. TEX. PENAL CODE ANN. §21.11(a)(2)(A). The intent can be inferred from the defendant's conduct, his remarks, and all surrounding circumstances. *See Ranson v. State*, 707 S.W.2d 96, 97 (Tex. Crim. App. 1986); *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981); *see also Ashanti v. State*, No. 05-96-01920-CR, 1999 WL 39041, at *2 (Tex. App.−Dallas Feb. 1, 1999, pet. ref'd) (not designated for publication) (stating nothing in *McKenzie* suggests all three types of evidence listed are necessary to infer intent).

The record before us demonstrates that, during a forensic interview, N.N. wrote that appellant was "noked," meaning naked. N.N. further testified that, when appellant "shaked" N.N.'s penis, appellant's clothes were off. The record reflects N.N. was six-years-old at the time of the incident in question. N.N. testified appellant touched him under his clothes, and he saw appellant's penis. We note a child sex abuse victim's uncorroborated testimony is sufficient to

support a conviction for indecency with a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07; *Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.−Houston [1st Dist.] 2014, no pet.). Given the surrounding circumstances, we also conclude appellant's intent to arouse or gratify his sexual desire may be inferred. *See McKenzie*, 617 S.W.2d at 216. We overrule appellant's first issue.

### Rule 404(b)

In his second issue, appellant contends the trial court abused its discretion under rule 404(b) by admitting the extraneous offense testimony of Brian Pervis. Specifically, appellant argues the testimony of Pervis could not have been brought to rebut the defensive theory of fabrication, because he did not raise fabrication. Instead, appellant asserts he has conceded N.N. was molested, but not by appellant.

Rule 404(b) prohibits the admission of extraneous offense evidence to prove an individual's character in order to show action in conformity with that character. TEX. R. EVID. 404(b). This limitation is not based on legal relevance; rather, the evidence is inherently prejudicial, has a tendency to confuse the issues, and forces the accused to defend himself against uncharged crimes in addition to the charged offense. *Daggett v. State*, 187 S.W.3d 444, 451 (Tex. Crim. App. 2005); *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex. Crim. App. 1972). However, extraneous offense evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX. R. EVID. 404(b). These exceptions are not exclusive, and the proponent of misconduct evidence need not "stuff" a given set of facts into one of the laundry-list exceptions set out in rule 404(b) for admission to be proper; he must, however, explain the logical and legal rationales that support admission. *See De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009).

A trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse of discretion standard. *Id.* As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and the trial court's ruling will be upheld. *Id.* at 344. A trial court's ruling is generally within this zone if the evidence shows that (1) an extraneous transaction is relevant to a material, non-propensity issue, and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *Id.* Furthermore, if the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial court gave the wrong reason for its right ruling. *Id.*

The court of criminal appeals has stated that rebuttal of a defensive theory is one of the permissible purposes for which relevant evidence may be admitted under rule 404(b). *See Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). Here, the trial court allowed the testimony of Brian Pervis to rebut the defensive theory of fabrication. Prior to Pervis's testimony, the trial court instructed the jury to only consider his testimony if they first found and believed beyond a reasonable doubt that appellant committed such other offense or offenses and, only then, to consider Pervis's testimony to rebut the defensive theory of fabrication.

In his brief, appellant claims he did not raise the defensive theory of fabrication because he concedes N.N. was molested, but not by him. Our review of the record, however, shows appellant did raise the defensive theory of fabrication during trial. First, during opening statement, defense counsel labeled N.N. as "a very disturbed boy" and indicated the police officers in Colorado thought something must have happened to N.N. to explain why he acted out sexually toward the little girl. Defense counsel further implied the officers had no interest in discovering what really happened, as evidenced by their absence during N.N.'s multiple forensic interviews.

During opening statement and the cross-examination of N.N.'s mother, defense counsel developed the theory that the police and social workers in Colorado were so convinced that N.N. had been victimized that they repeatedly interviewed him until N.N. disclosed what they already decided had happened. Counsel suggested through questioning that Detective Hay indicated to Lisa that "kids don't act out like this, somebody must've touched him." Counsel, through cross-examination of Kelly (the forensic interviewer), elicited that it was "possible that if [N.N.] thought he was in trouble, that he would say whatever he wanted−whatever he thought [she] wanted to hear to get out of there." Further, through questioning Kelly, defense counsel suggested N.N. recanted because "it didn't actually happen," and Kelly answered that sometimes children will recant a false allegation.

Further, in his opening statement, defense counsel questioned N.N.'s version of the events when counsel noted N.N. stated appellant "was under the couch naked in [his] playroom" and that his "mom walked in and saw it." On cross-examination of Lisa, counsel elicited the facts that Lisa did not see appellant naked and there was no couch in the room. He further suggested that Lisa did not believe N.N.'s account of the incident, because she did not immediately call the police and also did not "kick her brother [appellant] out of the house." He established that Lisa had not told the authorities about the incident with appellant until after the authorities in Colorado became involved. Defense counsel further elicited from Lisa that N.N. recanted what he had said about the incident. Counsel also asked Lisa about N.N.'s medications and counseling. Finally, counsel suggested someone else was to blame for the abuse, obtaining evidence from Lisa that, before appellant had stayed with them in Richardson, another little girl had taught N.N. a "touch you here or here or here" game and that N.N. had been around his brother-in-law, Lowell, when they lived in Houston.

In response to the defensive theory of fabrication, the State presented the testimony of Pervis. To be admissible for rebuttal of a fabrication defense, "the extraneous misconduct must be at least similar to the charged one." *See Newton v. State*, 301 S.W.3d 315, 318 (Tex. App.−Waco 2009, pet. ref'd) (citing *Wheeler v. State*, 67 S.W.3d 879, 887 n. 22 (Tex. Crim. App. 2002)). Although some similarity is required, the requisite degree of similarity is not as exacting as necessary when extraneous offense evidence is offered to prove identity by showing the defendant's system or modus operandi. *Id.* (citing *Dennis v. State*, 178 S.W.3d 172, 178 (Tex. App.−Houston [1st Dist.] 2005, pet. ref'd)).

Here, we conclude the extraneous offense is sufficiently similar to the charged offense. Both victims were appellant's nephews; each boy was living in the same house as appellant at the time of the offense; appellant used each boy's lack of sexual knowledge as a prelude to the sexual abuse−talking about the birds and the bees with N.N. and talking about girls and pornography with Pervis; and appellant made contact with each boy's penis−either with his hands or his mouth. Contrary to appellant's argument, it is not fatal that Pervis did not make an immediate outcry. *Newton*, 301 S.W.3d at 318 (stating rule 404 does not impose any presumptive time limitation which must be met for an extraneous offense to have probative value.) Further, although there was an age difference between the victims here, we note the court of criminal appeals has permitted evidence of the defendant's molestation of a five-year-old and an eleven-year-old to rebut a claim of fabrication by a sixteen-year-old complainant. *See Bass v. State*, 270 S.W.3d 557, 558-63 (Tex. Crim. App. 2008). Finally, the testimony regarding appellant's "artwork" supports the State's rebuttal argument regarding appellant's fascination with the male anatomy. Because the two offenses are sufficiently similar, we conclude the trial court did not abuse its discretion in determining Pervis's testimony was admissible to rebut the

defensive theory of fabrication.  See *De La Paz*, 279 S.W.3d at 343; *Newton*, 301 S.W.3d at 318. We overrule appellant's second issue.

*Rule 403*

In his third issue, appellant contends the trial court abused its discretion under rule 403 by admitting the extraneous offense testimony of Pervis.  Specifically, appellant argues the trial court erred by not excluding the evidence on the basis that the probative value was substantially outweighed by the danger of unfair prejudice.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."  TEX. R. EVID. 403.  "We have long held that a trial court is entitled to broad discretion in ruling on a Rule 403 objection."  *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005) (citing *Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003)).  "Rule 403's language implies that a determination under this rule is inherently discretionary with the trial court."  *Id.* (citing *Montgomery v State*, 810 S.W.2d 372, 378-79 (Tex. Crim. App. 1990)).  "The inclusion of the word 'may' displays the drafters' intent to vest the trial court with substantial discretion."  *Id.* (citing *Manning*, 114 S.W.3d at 926).  Furthermore, the "trial court is in a superior position to evaluate the impact of the evidence." *Id.* (citing *Montgomery*, 810 S.W.2d at 378-79).  "Unlike the trial court, an appellate court "'cannot weigh on appeal. . . the intonation and demeanor of the witnesses preceding the testimony in issue. . . nor can we determine the emotional reaction of the jury to other pieces of evidence. . . ."  *Id.* (citing *Montgomery*, 810 S.W.2d at 379).

"The test for whether the trial court abused its discretion is whether the action was arbitrary or unreasonable."  *Id.* (citing *Manning*, 114 S.W.3d at 926).  "An appellate court should not reverse a trial judge whose ruling was within the zone of reasonable disagreement."  *Id.* at

440 (citing *Manning*, 114 S.W.3d at 926; *Montgomery*, 810 S.W.2d at 380).   "A proper Rule 403 analysis includes, but is not limited to, four factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence." *Id.* (citing *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004); *Montgomery*, 810 S.W.2d at 389-90).   More recently, the court of criminal appeals has looked to the language of rule 403 and restated the factors:

> [A] trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).   The Court noted these factors may blend together in practice.  *See id.*

Considering the first *Gigliobianco* factor, appellant contends the probative value was outweighed by the danger of unfair prejudice because the testimony of another victim is highly inflammatory and "together with the evidence of Appellant's interest in 'penises and homosexual acts' undoubtedly produced unfair prejudice against" him.   As we have already discussed in our rule 404(b) analysis, the extraneous offense evidence was probative to rebut appellant's defensive theory of fabrication.  *See Newton*, 301 S.W.3d at 318.   The extraneous offense is sufficiently similar to the charged offense to have probative value on this issue.  *See id.*   On the other hand, although remoteness is not of import when determining whether extraneous offense evidence has probative value, it does factor in when assessing whether the probative value of such evidence is substantially outweighed by the danger of unfair prejudice.  *See Reyes v. State*,

69 S.W.3d 725, 740 (Tex. App.−2002, pet. ref'd). The remoteness of the incident involving Pervis lessens its probative value. *See id.* Thus, balancing the similarity and the remoteness of the extraneous offense, we conclude this factor only weighs slightly in favor of admissibility.

With regard to the second factor, the trial court could have reasonably concluded that the State's need for the extraneous offense evidence was high. We have already elaborated upon the defensive evidence, raising numerous attacks on N.N.'s credibility. There was no physical evidence available to corroborate N.N.'s testimony. *See Newton*, 301 S.W.3d at 320. In addition, the State demonstrated that it needed this evidence to rebut the defensive theory of fabrication. *See id.* at 318. Thus, this factor weighs in favor of admissibility.

In considering the third factor, we note extraneous offense evidence of this nature does have a tendency to suggest a verdict on an improper basis because of the inherently inflammatory and prejudicial nature of crimes of a sexual nature committed against children. *See Montgomery*, 810 S.W.2d at 397; *Blackwell*, 193 S.W.3d 1, 17 (Tex. App.−Houston [1st Dist.] 2006, pet. ref'd). The danger of unfair prejudice was somewhat counter-balanced by the trial court's limiting instruction. *See Blackwell*, 193 S.W.3d at 17-18. Defense counsel reminded the jury of the limiting instruction during closing argument, and the jury is presumed to follow the trial court's instructions. *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). However, we conclude this factor weighs slightly in favor of exclusion of the evidence.

Next, we note appellant's complaint focuses on unfair prejudice. He does not contend the admission of the extraneous offense evidence caused confusion of the issues or misled the jury. Thus, we do not address the fourth and fifth *Gigliobianco* factors. *See Newton*, 301 S.W.3d at 319 n. 4.

The final factor concerns whether the presentation of the extraneous offense evidence consumed an inordinate amount of time. *See Gigliobianco*, 210 S.W.3d at 641-42. This factor focuses on the time needed "to develop the evidence, during which the jury [is] distracted from consideration of the indicted offense." *See Mechler*, 153 S.W.3d at 441. Because the concern is the extent to which the jury is distracted from considering the charged offense, the time needed to develop the extraneous-offense evidence necessarily includes any testimony introduced with regard to the extraneous offense, including cross-examination, redirect examination, etc. and any rebuttal offered by the defense in response to the extraneous-offense evidence. *See Newton*, 301 S.W.3d at 321. We do not include hearings conducted outside the jury's presence or jury argument. *See Dennis*, 178 S.W.3d at 181 n. 2. Our review of the record shows that Pervis's testimony consisted of approximately twenty-six pages during the guilt/innocence phase of trial out of approximately three-and-a-half volumes of testimony. This factor weighs in favor of admission.

To summarize, three factors weigh in favor of admission and one factor weighs only slightly in favor of exclusion. Having reviewed the record before us and weighed the necessary factors, we conclude the trial court did not abuse its discretion under rule 403. *See Gigliobianco*, 210 S.W.3d at 641-42; *Mechler*, 153 S.W.3d at 439. We overrule appellant's third issue.

### Conclusion

Having overruled appellant's three issues, we affirm the judgment of the trial court.

Do Not Publish
TEX. R. APP. P. 47
130242F.U05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

WILLIAM WAYNE LAUBE, Appellant

No. 05-13-00242-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial District
Court, Collin County, Texas
Trial Court Cause No. 401-81056-2012.
Opinion delivered by Justice Bridges.
Justices Francis and Lang-Miers
participating.

      Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered June 30, 2014