**AFFIRM; and Opinion Filed June 7, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-18-00170-CR
No. 05-18-00171-CR

**JASON DANIEL STRICKLAND, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F15-76631-V**
**Trial Court Cause No. F16-00834-V**

## MEMORANDUM OPINION

Before Justices Bridges, Brown, and Nowell
Opinion by Justice Brown

Appellant Jason Daniel Strickland appeals his convictions for one count of trafficking a child[1] and one count of sexual assault of a child.[2] In three issues, appellant contends (1) article 38.37 of the Texas Code of Criminal Procedure violates his right to due process, (2) the trial court abused its discretion in admitting evidence of prior convictions, and (3) the evidence is insufficient to support his conviction for trafficking a child. For the following reasons, we affirm the trial court's judgments.

---

[1] Trial court cause number F15-76631-V; appellate cause number 05-18-00170-CR.

[2] Trial court cause number F16-00834-V; appellate cause number 05-18-00171-CR.

BACKGROUND

Appellant entered pleas of not guilty to indictments charging him with one count of trafficking a child and one count of sexual assault of a child. Before trial, the State filed a notice of intent to use evidence of appellant's previous convictions on five counts of rape pursuant to article 38.37 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b). At a pretrial hearing, appellant objected to the evidence as irrelevant and overly prejudicial. He also challenged the constitutionality of article 38.37. The trial court overruled appellant's objections.

At trial, complaining witness V.P. testified she was fifteen-years-old and living with her parents in Allen, Texas during the summer of 2015. She was not doing much other than some babysitting and spent time communicating with people over the internet on her IPod Touch or an old IPhone. Her parents did not know she had downloaded a number of applications, some of which she was supposed to be eighteen to use. And, V.P. had been doing "things online that [she] was not proud of," including sending some nude pictures of herself. A recipient of the pictures threatened to tell V.P.'s sister, and V.P. was terrified and felt trapped. She determined she needed to get away, and began contacting people over social media to ask if she could stay with them.

V.P. first communicated with appellant, who was in his early thirties at the time, in an online chat forum. She told him her parents were really strict and she wanted to get away. After she asked if he could "help [her] out," appellant suggested they could have a relationship if she came to live with him. He talked about sex "pretty much all the time" and requested pictures, including a picture of V.P.'s "private area" and another of her holding a sign saying that she belonged to appellant. When appellant asked about doing sexual things, V.P. said "Sure. maybe" because she had learned from talking to guys on social media "for a couple months" that he would be more motivated to let her live with him.

V.P. testified she told appellant she was fifteen-years-old. On cross-examination, appellant's counsel asked if she recalled telling appellant she was twenty-two. V.P. testified that she did not recall that, but then responded "I guess not" when appellant's counsel asked if she "explicitly told him [she was] 15." V.P. acknowledged telling guys on the internet that she was older than fifteen, but she would have been surprised if appellant thought she was twenty-two because she did not look twenty-two in the pictures she sent him. Additionally, they had discussed that their plan could be "dangerous" for them because she was underage.

Twice, V.P. and appellant planned for appellant, who lived in Alabama, to pick her up, but he was unable to come. He then asked if she could travel to him by bus. V.P. found a ride from her house to the bus station when a seventeen-year-old boy she met on a messaging app told her his father would pick her up, take her to a motel where they would wait overnight, and then take her to the bus station in the morning. Appellant did not help V.P. arrange the ride, but told her beforehand that she was "probably going to have to do something . . ., like sexual favors, because, you know, people don't just do things for free." After V.P. told appellant she had arranged the ride, he said, "yeah, he's going to want to have sex with you and you should do it – you need to do it." V.P. told appellant she was "not ready for that," but appellant told her to call him when she was at the motel.

Cuauhtemoc Munoz, a man in his mid-forties, picked V.P. up at her house. He admitted there was no seventeen-year-old boy and he had been communicating with V.P. He took V.P. to a motel, where he removed her clothes and they "had sex." V.P. called appellant, as he had requested, on Munoz's telephone. Appellant asked her to touch and suck Munoz's penis. Munoz and V.P. then had vaginal and oral sex while appellant remained on speaker phone. Later, Munoz "started having sex" with V.P. again in the shower; she told him to stop "over and over," but he did not.

At appellant's suggestion, Munoz got V.P. a TracFone before dropping her off at the bus station. She and appellant spoke while she waited for the bus, and he told her she might want to wear some makeup to look a little older. Appellant then called V.P. while she was on the bus because her father had called him.[3] Appellant was very upset and told her not to come see him or mention him to her parents. V.P.'s parents picked her up in Birmingham, Alabama. V.P. testified appellant was the only reason she got on a bus to go to Alabama and arranged with Munoz for a ride to the bus station.

The State introduced evidence of telephone company records that tracked text messages and calls to and from V.P.'s, appellant's, and Munoz's phones. There were "a lot of" text messages between V.P. and appellant the day before she left home. Then, at 12:38 a.m., there was an outgoing text from appellant's phone to Munoz's phone, followed by six texts back and forth that ended at 12:47 a.m. Cell tower mapping data showed Munoz entered Allen shortly thereafter, at approximately 12:53 a.m. And, around 3:16 a.m., there was a long telephone call, lasting just under an hour, from Munoz's phone to appellant.

Munoz also testified at trial. For his conduct, Munoz had pleaded guilty to charges of sexual assault and trafficking a person. He initially testified that he first spoke with appellant after he and V.P. had sex, but later corrected his testimony to reflect that he spoke beforehand with appellant, who wanted Munoz to "have sex with her." Afterward, appellant and Munoz spoke, and appellant asked "questions as far as how was she and stuff like that." Munoz admitted he had fabricated "stories" to the police detective because he was nervous and had a natural inclination to lie. However, he consistently told the detective that appellant called and wanted to hear the intercourse.

---

[3] After he discovered she was missing, V.P.'s father found a list of phone numbers she left in her bedroom. He called the numbers, one of which was appellant's.

The State introduced evidence of appellant's prior convictions for rape offenses committed in Oklahoma when he was approximately twenty years old. The evidence consisted of a 2006 judgment and sentence showing appellant pleaded guilty to five counts of rape, a district attorney narrative report showing the complainants in those cases were females between the ages of thirteen and fifteen, and appellant's sex offender registration records.

Following trial, the jury found appellant guilty of both offenses as charged in the indictments. The trial court sentenced appellant to confinement for life in each case with the sentences to run concurrently.

ARTICLE 38.37

Generally, evidence of an extraneous offense is inadmissible if offered to prove a person's character to show the person acted in conformity with that character. *See* TEX. R. EVID. 404(b). Notwithstanding rule 404(b), evidence that a defendant on trial for certain sex offenses against a child committed a separate sex offense against another child may be admissible under section 2(b) of code of criminal procedure article 38.37.[4] *See* CRIM. PROC. art. 38.37, § 2(b). The evidence is admissible for any relevant purpose, including as proof of the defendant's character and propensity to act in conformity with his character. *Id.*

In his first issue, appellant asserts article 38.37 violates the Fourteenth Amendment's due process guarantees by "revers[ing] the historic practice of excluding character propensity evidence."[5] An appellant bears the burden of demonstrating a statute is unconstitutional. *See*

---

[4] Specifically, section 2(b) provides:

> Notwithstanding Rules 404 and 405, Teas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

CRIM. PROC. art. 38.37, § 2(b). Both trafficking of a child and sexual assault of a child, as charged in these cases, are included in the offenses described in subsection (a)(1). *See id.* § 2(a)(1)(A), (D).

[5] In addition to section 2(b), appellant cites section 2-a (requiring trial court to conduct hearing outside jury's presence to determine whether the evidence will be adequate to support a jury finding the defendant committed the separate offense beyond a reasonable doubt) and section 3 (requiring State to give defendant thirty days' notice before trial of its intent to use extraneous-sexual offense or sexual-misconduct evidence in its case in chief) as "relat[ing] to" his constitutional challenge. Appellant, however, only generally complains about the "use of propensity evidence."

*Rodriguez v. State*, 93 S.W.3d 60, 68 (Tex. Crim. App. 2002). The court of criminal appeals has yet to address the constitutionality of article 38.37, section 2, but this Court and other courts of appeals have upheld its constitutionality under similar, if not identical, due process challenges. *See, e.g.*, *Mayes v. State*, No. 05-16-00490-CR, 2017 WL 2255588, at *18–19 (Tex. App.—Dallas May 23, 2017, pet. ref'd) (mem. op., not designated for publication); *Fronek v. State*, No. 05–14–01118–CR, 2016 WL 3144243, at *3–4 (Tex. App.—Dallas June 6, 2016, pet. ref'd) (mem. op., not designated for publication); *Buxton v. State*, 526 S.W.3d 666, 685–89 (Tex. App.— Houston [1st Dist.] 2017, pet. ref'd); *Robisheaux v. State*, 483 S.W.3d 205, 209–13 (Tex. App.— Austin 2016, pet. ref'd); *Bezerra v. State*, 485 S.W.3d 133, 139–140 (Tex. App.—Amarillo 2016, pet. ref'd); *Belcher v. State*, 474 S.W.3d 840, 843–47 (Tex. App.—Tyler 2015, no pet.); *Harris v. State*, 475 S.W.3d 395, 398–403 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). Because appellant does not distinguish his case from this prior authority or raise any new argument, we conclude he has not satisfied his burden to demonstrate the unconstitutionality of article 38.37. We overrule his first issue.

RULE 403

In his second issue, appellant contends that, notwithstanding article 38.37's applicability, the trial court erred in admitting evidence of his prior convictions for rape under Texas Rule of Evidence 403. TEX. R. EVID. 403. Appellant complains the evidence was not probative because it was unnecessary and the underlying offenses involved different conduct and were too remote in time. He also contends the evidence was inherently inflammatory, likely to distract given its "emotional content," and likely to cause unfair prejudice because the previous offenses were "more heinous."

Admission of evidence under article 38.37 is limited by rule 403's balancing test, which authorizes a trial court to exclude relevant evidence if its probative value is substantially

outweighed by its potential for unfair prejudice, confusion of the issues, mistaking the jury, undue delay, or needlessly cumulative evidence. *See* TEX. R. EVID. 403; *Belcher*, 474 S.W.3d at 847; *Fahrni v. State*, 473 S.W.3d 486, 492 (Tex. App.—Texarkana 2015, pet. ref'd); *Robisheaux*, 433 S.W.3d at 217–18. Probative value is the measure of how strongly the evidence serves to make more or less probable the existence of a fact of consequence to the litigation, coupled with the proponent's need for the evidence. *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). Unfair prejudice refers to a tendency to tempt the jury into finding guilt on an improper basis, such as an emotional one. *Id*. Confusion of the issues refers to "a tendency to confuse or distract the jury from the main issue in the case." *Id*.

A rule 403 analysis requires balancing the following factors:

(1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Id*. at 641–42. In practice, "these factors may well blend together." *Id*. at 642. We presume the probative value of relevant evidence substantially outweighs the danger of unfair prejudice from admitting the evidence. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999). Because the trial court is in the best position to assess the impact of relevant evidence, we reverse a rule 403 determination "rarely and only after a clear abuse of discretion." *Id*.

The State introduced evidence that appellant pleaded guilty to five counts of raping female complainants between the ages of thirteen and fifteen. The offenses took place in 2002 and 2003, one when appellant was nineteen-years-old and four when appellant was twenty-years-old. The State introduced the evidence following the testimony of V.P. and Munoz, which the State relied upon to prove the elements of the trafficking of a child and sexual assault of a child offenses.

During cross-examination, appellant challenged the credibility of both the witnesses, focusing on evidence that V.P. misrepresented her age to people on social media and Munoz's admission that he fabricated stories to the police. Appellant also attempted to develop testimony to show V.P. was "kind of the puppet master" to support his defense that he neither trafficked V.P. nor caused or contributed to her sexual assault. He argued V.P. contacted a number of people in her efforts to run away and ultimately made the arrangements, including getting a ride from Munoz, to leave town. Under these circumstances, the probative value of evidence showing appellant was sexually attracted to and had raped young, underage females the same age as V.P. was significant to counter the attacks on V.P.'s and Munoz's credibility and rebut appellant's defensive theory that he was simply a victim of V.P.'s plans.

We are not persuaded by appellant's argument that evidence of the convictions had no probative value because the underlying facts of the prior offenses are not sufficiently similar to the conduct at issue in these cases. Although appellant did not physically assault V.P., the evidence that he was sexually attracted to and assaulted a number of young females V.P.'s age in the past was probative of the facts that he groomed V.P. for "sexual favors," enticed her to come live with him in Alabama, and even directed her to perform sex acts with Munoz while he listened on the phone. Nor does the fact that the previous offenses took place twelve years earlier mean the evidence is not probative. Remoteness of an extraneous offense reduces the probative value of the evidence, but it is not sufficient alone to render an extraneous offense excluded under rule 403; instead, it is one aspect of whether the offense is probative. *See Gaytan v. State*, 331 S.W.3d 218, 226 (Tex. App.—Austin 2011, pet. ref'd); *see Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd). Here, the trial court could have reasonably concluded that the inherent probative force of the evidence of appellant's prior convictions, coupled with the State's need for the evidence, was considerable and weighed in favor of admissibility.

Clearly, the prior convictions had "a tendency to suggest a verdict on an improper basis because of the inherently inflammatory and prejudicial nature of crimes of a sexual nature committed against children." *See, e.g., Newton v. State*, 301 S.W.3d at 320. However, the evidence, consisting of three documents in two exhibits, was straightforward and very limited in scope. The State simply published the exhibits to the jury; there was no testimony regarding the underlying offenses. Further, the trial court admonished the jury that it could consider the evidence only if it found and believed beyond a reasonable doubt appellant committed the wrongful acts and, if so, only for proper purposes under article 37.38. The trial court included a similar instruction in the jury charge. We presume the jury obeyed these instructions. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). An appellant may rebut this presumption with evidence the jury failed to follow the instruction, *see id.*, but appellant identified no such evidence. Therefore, the trial court could have reasonably concluded admitting evidence of the prior convictions would not have a tendency to be given undue weight by the jury, suggest a decision on an improper basis, or confuse or distract the jury from the main issues.

Appellant nevertheless claims the evidence had a substantial and injurious effect or influence in determining the jury's verdict because it was introduced on direct examination and was "the focus" of the State's opening statement and closing argument. We disagree. During opening statements, the State advised the jury it would learn appellant was a registered sex offender with rape charges out of Oklahoma for sex with a minor. During guilt-innocence, the exhibits were admitted and referred to over approximately ten pages of a two-volume reporter's record; almost two of those pages consisted of the trial court admonishing the jury. After the State published the exhibits, it referred only to the sex offender registration records briefly during the testimony of Dallas police detective Eric Weast, who was able to identify and locate appellant after subpoenaing the records. Finally, during closing argument, the State reminded the jury that

appellant "got fifteen years for raping five different girls," but only after appellant's counsel argued detective Weast was "more interested" in appellant than Munoz because appellant was "a registered sex offender who might have committed a new offense." After reviewing the record, we conclude there was little or no likelihood the evidence was either repetitive or consumed an inordinate amount of time.

Having considered the relevant factors,[6] we conclude the trial court reasonably could have determined the prejudicial effect of the convictions did not substantially outweigh its probative value. Indeed, in cases like these, the probative value of extraneous offense evidence is presumptively very high, and the rule 403 balancing test normally will not favor excluding evidence of a defendant's prior sexual assaults of children. *See, e.g., Belcher*, 474 S.W.3d at 848. Accordingly, we conclude the trial court did not abuse its discretion in overruling appellant's objection to the evidence. We overrule appellant's second issue.

SUFFICIENCY OF THE EVIDENCE

In his third issue, appellant contends the evidence is insufficient to show he "trafficked" a child or compelled sexual assault as required to support his sex trafficking conviction. Instead, he maintains V.P. "set this entire incident in motion . . . [and] created the plan and she orchestrated the actions of everyone involved." Thus, according to appellant, there is no evidence that, but for his actions, "what happened . . . would not have happened."

In reviewing the sufficiency of the evidence, we consider all evidence in the light most favorable to the jury's verdict and determine whether any rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307,

---

[6] Appellant concludes his rule 403 argument by noting "it is difficult to imagine how a juror could have considered the inflammatory, prejudicial evidence only for non-character purposes." However, the evidence was admitted under article 38.37, which explicitly allows a jury to consider evidence that appellant committed other acts of sexual misconduct precisely because of its relevance to a propensity to commit the crime charged. *See* CRIM. PROC. art. 38.37, §2(b).

–10–

318–19 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). We defer to the jury, which must weigh the evidence, resolve conflicts in the testimony, and draw reasonable inferences from basic to ultimate facts. *Jackson*, 443 U.S. at 319; *Queeman*, 520 S.W.3d at 622. We presume the jury resolved any conflicts in favor of the verdict. *Queeman*, 520 S.W.3d at 622. We determine only whether the State presented a legally sufficient case of the offense and the evidence presented supports the jury's verdict. *Id*.

To establish sex trafficking of a child, the State was required to prove appellant knowingly "trafficked a child and by any means causes the trafficked child to engage in, or become the victim of" a sexual assault. *See* TEX. PEN. CODE ANN. § 20A.02(a)(7)(C). 'Traffic' means to "transport, entice, recruit, harbor, provide, or otherwise obtain another person by any means." *Id.* § 20A.01(4). A "[c]hild" is defined as "a person younger than 18 years of age." *Id.* § 20A.01(1).

"A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." PEN. § 6.04(a); *Robbins v. State*, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986); *Wooten v. State*, 267 S.W.3d 289, 296 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). Whether there is a sufficient causal nexus between a defendant's conduct and the charged harm is a fact issue for the jury to decide. *Id*. The State may use circumstantial evidence to establish the causal connection. *Id.* And, a jury may draw reasonable inferences regarding the ultimate facts from basic facts. *Id.*

In asserting his conduct did not cause the harm V.P. suffered, appellant cites evidence that V.P. (1) sought to run away before she ever communicated with appellant, (2) admitted she misrepresented her age to people on social media; (3) arranged for a ride to the bus station on her own; and (4) "agreed to have sex with [Munoz] on her own." Appellant also points to evidence that he and Munoz did not communicate until after Munoz had already assaulted V.P.

–11–

Appellant simply ignores his own conduct. V.P. testified that, but for appellant's promises that she could live with him, she would have never left home. Although V.P. first contacted appellant and asked if he could "help [her] out," he then fostered a relationship with her in which he talked about "sexual favors" "pretty much all the time," had V.P. send him provocative pictures of herself, and told her he wanted to be her boyfriend. He twice planned to pick her up himself and, when that did not transpire, he proposed she travel to him by bus. Before she even made arrangements to get to the bus station, appellant advised her that she would probably have to have sex because "people don't just do things for free." And, after she arranged for the ride, appellant said, "Well, this man is doing you a big, like, a huge favor, and he's going to expect [sex]. So you're going to do it for him." Appellant told V.P. to call him once she arrived at the motel and, when she did, directed her to perform sex acts and listened on the telephone while Munoz sexually assaulted her. Afterwards, appellant spoke to Munoz about "how [she was] and stuff like that." Although Munoz testified he did not know or speak to appellant prior to taking V.P. to the motel, there was evidence the two men texted back and forth that evening before he arrived at V.P.'s house.

The jury was the sole judge of the witnesses' credibility, the weight to be given their testimony, and, in this case, whether there was a sufficient causal nexus between appellant's conduct and the harm to V.P. *See Queeman*, 520 S.W.3d at 622; *Wooten*, 267 S.W.3d at 295–96. The evidence is clear that V.P. considered running away and contacted a number of people, including appellant, about staying with them. However, she never left home, encountered Munoz, or had sex with him as directed by appellant until after she and appellant planned, at appellant's suggestion, that she get on a bus to Alabama. Viewed in the light most favorable to the jury's verdict, a rational factfinder could have found (1) V.P.'s conduct was insufficient by itself to produce the harm that resulted and (2) appellant enticed V.P. and his conduct alone or concurrently

with V.P.'s conduct was sufficient to cause her to "engage in, or become the victim of" sexual assault. *See* PEN. §§ 6.04(a); 20A.02(a)(7)(C). Accordingly, we conclude the evidence is legally sufficient to show appellant trafficked V.P. and compelled sexual assault as required to support his trafficking of a child conviction. We overrule appellant's third issue.

We affirm the trial court's judgments.

/Ada Brown/
ADA BROWN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

180170F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JASON DANIEL STRICKLAND,
Appellant

No. 05-18-00170-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F15-76631-V.
Opinion delivered by Justice Brown;
Justices Bridges and Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 7th day of June, 2019.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JASON DANIEL STRICKLAND,
Appellant

No. 05-18-00171-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F16-00834-V.
Opinion delivered by Justice Brown;
Justices Bridges and Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 7th day of June, 2019.