

# IN THE
## TENTH COURT OF APPEALS

### No. 10-06-00160-CR

**BOBBY BLAKE NEWTON,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

From the 272nd District Court
Brazos County, Texas
Trial Court No. 05-00731-CRF-272

## OPINION ON REMAND

A jury convicted Bobby Blake Newton of indecency with a child and aggravated sexual assault by contact and assessed punishment at twenty years' imprisonment on the indecency count and sixty years' imprisonment on the aggravated sexual assault count. Newton contends in two points that the court abused its discretion by admitting extraneous-offense evidence under Rules of Evidence 404(b) and 403 respectively.

On original submission, this Court, with Chief Justice Gray dissenting, reversed the conviction, finding that the extraneous-offense evidence was not admissible under

Rule 404(b).  *See Newton v. State*, 283 S.W.3d 361, 367-68 (Tex. App.—Waco 2007).  The Court of Criminal Appeals reversed and remanded the case to this Court for reconsideration in light of its decision in *Bass v. State*, 270 S.W.3d 557 (Tex. Crim. App. 2008).[1]  *See Newton v. State*, 275 S.W.3d 490 (Tex. Crim. App. 2009) (per curiam).

We will affirm.

### Rule 404(b)

Newton contends in his first point that the court abused its discretion by admitting evidence that he sexually assaulted his step-daughter L.D. about twenty-five years before the charged offenses.[2]  Specifically, he argues that the extraneous offense is not sufficiently similar to the charged offenses and is too remote.

"Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court."  *De La Paz v. State*, 279 S.W.3d 336, 343-44 (Tex. Crim. App. 2009) (quoting *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)).  We review a trial court's ruling on the admissibility of extraneous offenses under an abuse-of-discretion standard.  *Id.*  As long as the court's ruling is within the "zone of reasonable disagreement," it will be upheld.  *Id.*

---

[1]     Newton presented four points on original submission.  *See Newton v. State*, 283 S.W.3d 361 (Tex. App.—Waco 2007), *rev'd*, 275 S.W.3d 490 (Tex. Crim. App. 2009) (per curiam).  We overruled two and sustained one.  *Id.*  Only the State sought review of our decision, and the Court of Criminal Appeals reversed on the sole point we decided in Newton's favor.  *See Newton*, 275 S.W.3d at 490.  Newton has filed a supplemental brief on remand narrowing his appellate points accordingly.  *See* 10TH TEX. APP. (WACO) LOC. R. 19 (providing for filing of supplemental briefs upon remand from Court of Criminal Appeals).

[2]     The "extraneous offense" regarding L.D. actually entails repeated sexual abuse against L.D. committed over several years.  The term "extraneous offense," when used with reference to L.D., refers to this series of extraneous offenses and not to any particular extraneous offense.

*Sufficient Similarity*

To be admissible for rebuttal of a fabrication defense, "the extraneous misconduct must be at least similar to the charged one." *Wheeler v. State*, 67 S.W.3d 879, 887 n.22 (Tex. Crim. App. 2002); *Galvez v. State*, No. 10-06-00332-CR, slip op. at 5, 2009 Tex. App. LEXIS 6300, at *8 (Tex. App.—Waco Aug. 12, 2009, no pet. h.) (not designated for publication); *accord Dennis v. State*, 178 S.W.3d 172, 178 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).  Although some similarity is required, the requisite degree of similarity is not as exacting as necessary when extraneous-offense evidence is offered to prove identity by showing the defendant's "system" or *modus operandi*.  *Dennis*, 178 S.W.3d at 179; *see Galvez*, No. 10-06-00332-CR, slip op. at 5, 2009 Tex. App. LEXIS 6300, at *8.

Here, the extraneous offense is sufficiently similar to the charged offense.  Both victims were Newton's step-daughters; both were about ten when Newton sexually assaulted them; both were similar in appearance; Newton did not threaten either of them; and Newton abused both of them for several years.  *See Galvez*, No. 10-06-00332-CR, slip op. at 6, 2009 Tex. App. LEXIS 6300, at *9; *Blackwell v. State*, 193 S.W.3d 1, 14-15 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *Dennis*, 178 S.W.3d at 179; *see also Bargas v. State*, 252 S.W.3d 876, 893 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (addressing similarity of extraneous offense in Rule 403 analysis).  Newton himself conceded on cross-examination that the extraneous-offense evidence and the charged offense were "remarkably similar."

*Remoteness*

The remoteness of an extraneous offense does impact its probative value. *See, e.g., Reyes v. State*, 69 S.W.3d 725, 740 (Tex. App.—Corpus Christi 2002, pet. ref'd). However, Rule 404 does not impose any presumptive time limitation which must be met for an extraneous offense to have probative value. *See* TEX. R. EVID. 404; *Hernandez v. State*, 203 S.W.3d 477, 480 (Tex. App.—Waco 2006, pet. ref'd); *Prince v. State*, 192 S.W.3d 49, 55 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Corley v. State*, 987 S.W.2d 615, 620 (Tex. App.—Austin 1999, pet.).

Evidence either has probative value, or it does not. *See* 1 STEVEN GOODE ET AL., GUIDE TO THE TEXAS RULES OF EVIDENCE § 401.3 (3d ed. 2002) ("Relevancy is an absolute. Either it is present or it is not."). Thus, remoteness is of import not when determining whether when extraneous-offense evidence has probative value but when assessing whether the probative value of such evidence is substantially outweighed by the danger of unfair prejudice or similar concerns under Rule 403. *See, e.g., Reyes*, 69 S.W.3d at 740; *Corley*, 987 S.W.2d at 620; 1 GOODE, *supra* § 401.3. *But cf. Teczar v. State*, No. 11-07-00075-CR, 2008 Tex. App. LEXIS 7876, at *21 (Tex. App.—Eastland Oct. 16, 2008, pet.) (not designated for publication) (examining remoteness in Rule 404(b) analysis, but citing *Corley* which examined remoteness under Rule 403). Accordingly, we will address the remoteness of the extraneous-offense evidence in our analysis under Rule 403.

The extraneous-offense evidence regarding L.D. is sufficiently similar to the charged offenses to be admissible under Rule 404(b) to rebut Newton's fabrication defense. Remoteness is not a consideration under Rule 404(b). Thus, the court did not

abuse its discretion by overruling Newton's Rule 404(b) objection.  We overrule his first point.

## Rule 403

Newton contends in his second point that the court abused its discretion by admitting the extraneous-offense evidence because its probative value was substantially outweighed by the danger of unfair prejudice.

> Relevant evidence may be excluded under Rule 403 only if its probative value is substantially outweighed by the danger of unfair prejudice. Under Rule 403, it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice.  The rule envisions exclusion of evidence only when there is a "clear disparity between the degree of prejudice of the offered evidence and its probative value."
>
> Because Rule 403 permits the exclusion of admittedly probative evidence, it is a remedy that should be used sparingly, especially in "he said, she said" sexual-molestation cases that must be resolved solely on the basis of the testimony of the complainant and the defendant.

*Hammer v. State*, No. PD-786-08, 2009 Tex. Crim. App. LEXIS 513, at *34-35 (Tex. Crim. App. Apr. 8, 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)) (footnotes omitted).

In its seminal decision in *Montgomery v. State*, the Court of Criminal Appeals identified four non-exclusive factors to be considered in determining whether evidence should be excluded under Rule 403.  810 S.W.2d 372, 389-90 (Tex. Crim. App. 1991) (op. on reh'g).  Those factors were: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and, (4) the proponent's need for the evidence.  *See id.* (citing 22 CHARLES A. WRIGHT & KENNETH W. GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 5250, at 545-51

(1978); EDWARD J. IMWINKELRIED, UNCHARGED MISCONDUCT EVIDENCE §§ 2:12, 8:03, 8:07

(1984)); *accord Prible v. State*, 175 S.W.3d 724, 733 (Tex. Crim. App. 2005).

More recently, the Court has looked to the language of Rule 403 and restated the

pertinent factors.

> [A] trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. Of course, these factors may well blend together in practice.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006) (footnotes omitted);

*accord Subirias v. State*, 278 S.W.3d 406, 408 (Tex. App.—San Antonio 2008, pet. ref'd);

*Brock v. State*, 275 S.W.3d 586, 590 (Tex. App.—Amarillo 2008, pet. ref'd); *Stafford v. State*,

248 S.W.3d 400, 411-12 (Tex. App.—Beaumont 2008, pet. ref'd); *but see De La Paz*, 279

S.W.3d at 349 (applying *Montgomery* factors).[3]

As with his Rule 404(b) complaint, Newton's primary contention is that the

probative value of the extraneous-offense evidence is substantially outweighed by the

danger of unfair prejudice because of the lack of similarities between the charged

---

[3] The *Gigliobianco* "restatement" of the *Montgomery* factors appears to be non-substantive. Rather, the *Montgomery* factors were more closely tailored to the language of Rule 403 by *Gigliobianco*. *See Gigliobianco v. State*, 210 S.W.3d 637, 642 n.8 (Tex. Crim. App. 2006) ("By our decision today, we do no more than refine and build upon our previous analysis, and bring it in line with the plain text of Rule 403.").

offenses and the extraneous offense and because of the remoteness of the extraneous offense.[4]

The extraneous-offense evidence was probative to rebut Newton's defensive theory of fabrication. As we have already discussed, the extraneous-offense evidence is sufficiently similar to the charged offense to have probative value on this issue. *See Galvez*, No. 10-06-00332-CR, slip op. at 7, 2009 Tex. App. LEXIS 6300, at *10; *Bargas*, 252 S.W.3d at 893; *Blackwell*, 193 S.W.3d at 15; *Dennis*, 178 S.W.3d at 180-81. Conversely, Newton is correct that the remoteness of the extraneous-offense evidence significantly lessens its probative value. *See Teczar*, 2008 Tex. App. LEXIS 7876, at *21; *Reyes*, 69 S.W.3d at 740. Thus, this factor weighs only slightly in favor of admissibility.

The trial court could have reasonably concluded that the State's need for the extraneous-offense evidence was "considerable." *See Gigliobianco*, 210 S.W.3d at 642. There were no eyewitnesses and no physical evidence available to corroborate the complainant's testimony. *See Wheeler*, 67 S.W.3d at 889; *Bargas*, 252 S.W.3d at 893; *Blackwell*, 193 S.W.3d at 18; *Dennis*, 178 S.W.3d at 181. In addition, the State demonstrated that it needed this evidence to rebut Newton's claim of fabrication. *Id.* Thus, this factor weighs in favor of admissibility.

Extraneous-offense evidence of this nature does have a tendency to suggest a verdict on an improper basis because of the inherently inflammatory and prejudicial nature of crimes of a sexual nature committed against children. *See Montgomery*, 810

---

[4] Newton's complaint focuses on unfair prejudice. He does not contend that the admission of the extraneous-offense evidence caused confusion of the issues or misled the jury. Thus, we do not address the fourth and fifth *Gigliobianco* factors. *See Gigliobianco*, 210 S.W.3d at 641.

S.W.2d at 397; *Bjorgaard v. State*, 220 S.W.3d 555, 560 (Tex. App.—Amarillo 2007), *pet. dism'd, improvidently granted*, 253 S.W.3d 661 (Tex. Crim. App. 2008) (per curiam); *Blackwell*, 193 S.W.3d at 17. This danger of unfair prejudice was counter-balanced to some extent by the trial court's limiting instruction. *See Blackwell*, 193 S.W.3d at 17-18. Nevertheless, this factor weighs in favor of exclusion of the evidence. *Id.*

The last factor concerns whether presentation of the extraneous-offense evidence consumed an inordinate amount of time.[5] *See Gigliobianco*, 210 S.W.3d at 641-42. The State contends that we should only consider the amount of time devoted to L.D.'s direct examination (11 pages). *See Dennis*, 178 S.W.3d at 181 ("M.W.'s direct examination was not unduly lengthy"). Conversely, Newton includes much more in his calculations: (1) "protracted discussions outside the jury's presence as to its admissibility" (48 pages); (2) L.D.'s entire testimony (direct, cross-examination, redirect, etc.) (81 pages); (3) testimony of the person to whom L.D. made outcry (10 pages); (4) testimony of L.D.'s father offered by Newton in rebuttal (23 pages); and (5) references in argument to L.D.'s testimony (41 pages).

In *Dennis*, on which the State relies, the court looked only to the length of the direct examination of the extraneous-offense complainant and gave the following rationale for doing so:

> We decline Dennis's invitation to include in this analysis the time spent out of the presence of the jury on motions and arguments concerning M.W.'s testimony. The potential for unfair prejudice occurs if the State

---

[5] Another consideration is whether the extraneous-offense evidence will "merely repeat evidence already admitted" or, in other words, will constitute the "needless presentation of cumulative evidence." *See* Tex. R. Evid. 403; *Gigliobianco*, 210 S.W.3d at 641-42. Here, the extraneous-offense evidence is not cumulative.

spends an undue amount of time presenting the extraneous offense to the jury.

*Id.* at 181 n.2.

This factor focuses on the time needed "to develop the evidence, during which the jury [is] distracted from consideration of the indicted offense." *State v. Mechler*, 153 S.W.3d 435, 441 (Tex. Crim. App. 2005); *see Montgomery*, 810 S.W.2d at 390. Because the concern is the extent to which the jury is distracted from considering the charged offense, we hold that the time needed to develop the extraneous-offense evidence necessarily includes any testimony introduced with regard to the extraneous offense, including cross-examination, redirect examination, etc. and any rebuttal offered by the defense in response to the extraneous-offense evidence. *See Isenhower v. State*, 261 S.W.3d 168, 179 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (direct, cross-examination, and redirect); *Lopez v. State*, 200 S.W.3d 246, 253 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (testimony from extraneous-offense complainant, her father, and appellant); *Blackwell*, 193 S.W.3d at 18 (testimony from extraneous-offense complainants and two police officers); *Colvin v. State*, 54 S.W.3d 82, 86 (Tex. App.—Texarkana 2001, no pet.) (testimony from extraneous-offense complainant and outcry witness). Stated another way, Newton would not have cross-examined L.D. or offered the testimony of her father, nor would the State have offered the testimony of L.D.'s outcry witness if the State had not called L.D. to testify. Thus, this additional testimony must be included when determining the time needed to develop the extraneous-offense evidence.

We do not include, however, hearings conducted outside of the jury's presence or jury argument. *See Dennis*, 178 S.W.3d at 181 n.2.

Accordingly, the time needed to develop the extraneous-offense evidence amounted to about 116 pages[6] out of the 426 pages of testimony offered during the guilt-innocence phase or about twenty-seven percent. Viewed in terms of the number of days, the parties presented testimony for about three and one-half days. The extraneous-offense evidence took up one full afternoon on the second day of testimony, all of the following morning, about half the next afternoon, and part of the last morning.

This factor weighs in favor of exclusion. *See Russell v. State*, 113 S.W.3d 530, 546 (Tex. App.—Fort Worth 2003, pet. ref'd) (factor weighed in favor of exclusion where extraneous-offense evidence amounted to about 30% of testimony); *Booker v. State*, 103 S.W.3d 521, 536 (Tex. App.—Fort Worth 2003, pet. ref'd) ("just over half"); *cf. Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996) (factor weighed in favor of admission where extraneous-offense evidence amounted to "less than one-fifth"); *Maranda v. State*, 253 S.W.3d 762, 768 (Tex. App.—Amarillo 2007, no pet.) (about 10%); *Prince*, 192 S.W.3d at 56 (less than 10%).

To summarize, half of the factors we have considered weigh in favor of admission of the extraneous-offense evidence and half weigh in favor of exclusion. However, Rule 403 "envisions exclusion of evidence only when there is a *'clear disparity between the degree of prejudice of the offered evidence and its probative value.'"

---

[6] According to our calculations, this figure includes: (1) 70 pages for L.D.'s testimony (Vol. IV, pp. 97-107; Vol. V, pp. 9-67); (2) 10 pages for the outcry witness's testimony; (3) 23 pages for L.D.'s father's testimony; and (4) 13 pages of Newton's testimony offered to rebut L.D.'s testimony. (Vol. VI, pp. 44-49, 60-63, and 67-69).

*Hammer*, 2009 Tex. Crim. App. LEXIS 513, at \*34 (emphasis added) (quoting *Conner*, 67 S.W.3d at 202).  This rule "should be used sparingly."  *Id.*, 2009 Tex. Crim. App. LEXIS 513, at \*35.  We cannot say that there is a "clear disparity" between the danger of unfair prejudice posed by the extraneous-offense evidence and its probative value.  Thus, we cannot say the court abused its discretion by overruling Newton's Rule 403 objection.

We overrule Newton's second point and affirm the judgment.


                                        FELIPE REYNA
                                        Justice

Before Chief Justice Gray,
        Justice Reyna, and
        Justice Davis
        (Chief Justice Gray concurring with note)\*
Affirmed
Opinion delivered and filed August 19, 2009
Publish
[CRPM]


\*        (As evidenced by the number of cases cited by the Court, there is a growing trend to simply count pages in the record to evaluate the factor of time to develop the extraneous-offense evidence.  This is a dangerous trend and an unsatisfying way to evaluate this factor.  The factor under review is the time "needed" to develop the testimony.  If all we do is count pages, all the pages, it simply encourages the defense to engage in tactics to drag out and extend the presentation of the evidence.  Further, those pages are, for the most part, created after the trial court made its ruling, a ruling more often based upon the representations of counsel during a hearing on the admissibility of the evidence.  Thus counting pages is dangerous because it tends to encourage inappropriate behavior and allows us to second guess the trial court based upon information not before the trial court at the time it made its ruling.  And it is an unsatisfying way to evaluate this factor because it is an arbitrary but objective measure of a largely subjective factor.  It is a measure of the number of pages in a record that was *taken* to develop the evidence and not necessarily a good measure of the amount of time *needed* to develop the evidence.  We cannot ignore the subjective determination of how much time was really needed versus the time taken.  I have used this measure in evaluating this factor and do not believe it is error but felt compelled to note some of

the inherent problems with its use, particularly if this is the only measure used to evaluate this factor.

With these comments I concur in the judgment of the Court to the extent it affirms the trial court's judgment.)