

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00171-CR

BRANDON HARRISON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 17-F-0592-102

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

A Bowie County jury found Brandon Harrison guilty on two counts of aggravated sexual assault with a deadly weapon.[1]  In his sole point of error on appeal, Harrison argues that the trial court erred in allowing extraneous-offense evidence of his sexual assault of another victim.  We find that the trial court's ruling allowing the State to use extraneous-offense evidence to rebut Harrison's defense of fabrication was not an abuse of discretion.  Accordingly, we affirm the trial court's judgment.

## I.      Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).  Abuse of discretion occurs only if the decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree."  *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).  We may not substitute our own decision for that of the trial court.  *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).  We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

## II.     Factual Background

Harrison's victim was his ex-wife, Kaylie.  Kaylie alleged that the assault occurred on the same day that she signed a proposed divorce decree.  While he admitted to holding Kaylie at

---

[1]Harrison was sentenced to ten years' imprisonment on both counts and ordered to pay a $10,000.00 fine on the first count of aggravated sexual assault.

knifepoint, Harrison denied the sexual assault. During his opening statement, Harrison's counsel argued that Kaylie "wanted to block [Harrison] out" because she was dating and had devised a plan to obtain an unequal division of community property in their divorce. After opening statements, the State called Kaylie as its first witness.

As a result of Harrison's harassment during their separation, Kaylie obtained a restraining order against him and filed for divorce. She said that Harrison became angry when he discovered she was dating before the divorce was finalized. Kaylie testified that she returned home after signing the proposed divorce decree, noticed that the garage door was kicked in, and turned to find Harrison running at her with a knife.

Kaylie said Harrison knocked her down to the ground, held the knife to her throat, and covered her screams. He then forced her into the bedroom and raped her at knifepoint. She provided the harrowing details of the rape for the jury. Following the assault, Harrison spoke of reconciling their marriage, but beat Kaylie when she attempted to escape. Kaylie testified that Harrison's emotional state was "all over the place" and that he was violent at times and desperately apologetic at other times.

According to Kaylie, the "nightmare scenario" lasted for at least an hour and ended when she managed to text her boyfriend, David Owens, for help during the sexual assault.[2] According to Rusty Hill, an officer with the New Boston Police Department, Owens reported Kaylie was being held hostage with a knife. Because no one answered the door, Hill testified that he waited

---

[2]Kaylie testified that Harrison was behind her during the rape and that "he did not see because he was standing back there."

3

for backup for four or five minutes before entering the home and arresting Harrison. Owens testified that Kaylie ran to him shaking and crying. While distraught, Kaylie provided a brief description of the rape. A few days later, Kaylie filed an amended petition of divorce and prayed that the house be awarded as her separate property.[3]

Kaylie reported the assault to Charlenne Kanatzar, a sexual assault nurse examiner (SANE), who collected evidence from Kaylie's body but noted no trauma on Kaylie's vaginal area.[4] The DNA test results from the specimens collected by Kanatzar yielded mixed results, because Kaylie reported having sex with Owens before returning home after the divorce papers were signed.

Kristy Link, a forensic scientist for the Texas Department of Public Safety, testified that a mixture of male DNA was found on all swabs collected by Kanatzar. Harrison was excluded as a major contributor of the DNA profile on the vaginal swab, while Owens could not be excluded. Kanatzar explained that the vaginal swab had a minor male contributor but that his DNA was not prevalent enough to identify a potential contributor. Link also testified that the DNA mixture on the oral and left-hand swabs were inconclusive, but that a swab of Kaylie's right hand excluded Owens, but not Harrison or his biological child as a potential major DNA contributor.

Brandon Harbison, the lead detective with the New Boston Police Department, testified that photos he took of Harrison after his arrest revealed scratches on his neck and torso. According to Harbison, Harrison admitted that he broke into the house by kicking in the garage door, held a

---

[3]Lance Johnson, a mutual friend of Harrison and Kaylie, and Kaylie's sister, Kristin Griffin, were asked to go to Harrison's apartment after the arrest and found a suicide note addressed to Kaylie on the bed.

[4]Kathy Lach, another SANE, explained that the absence of vaginal trauma did not prove that the rape did not occur.

4

knife to Kaylie, and forced her on the ground. However, he told Harbison that he set the knife down, and he denied the sexual assault.

During cross-examination, Harbison testified that he received a telephone call while driving to the scene from Randall Baggett, a deputy with the Bowie County Sheriff's Office whom Kaylie identified as her stepfather. Kaylie also said that law enforcement officials had a strong bond with each other, and Haribson labeled Baggett as an interested and possibly biased third party. Hill had also admitted awareness that he was responding to Baggett's stepdaughter's home before arresting Harrison.

The State sought to admit evidence of an extraneous sexual assault for the purpose of rebutting Harrison's defense of fabrication, which the State argued was established by Harrison's opening statement and cross-examination of the witnesses. At trial, Harrison offered no response to the State's argument that it had opened the door to the extraneous offense. To assist in his determination of whether the extraneous offense should be admitted, the trial court heard testimony from the victim, Donna Duncan.

Duncan testified that she was assaulted while working at the Telford Unit of the Texas Department of Criminal Justice with Harrison, where Kaylie had also worked. Duncan said that Harrison was her supervisor and that she rejected his increasingly inappropriate sexual advances toward her before he sexually assaulted her. According to Duncan, Harrison masturbated in front of her, held her hostage in a locked room, told her she was not going anywhere, took off her clothes, and raped her despite her protests. The State added that Harrison had also denied assaulting Duncan.

5

Harrison argued that Kaylie's and Duncan's sexual assaults were dissimilar because Harrison did not use or exhibit a deadly weapon during the extraneous offense. The trial court admitted the extraneous-offense evidence.

### III.    The Trial Court's Ruling Was Not an Abuse of Discretion

"Evidence of extraneous offenses is generally inadmissible at the guilt phase of trial to prove action in conformity therewith." *Sims v. State*, 273 S.W.3d 291, 294 (Tex. Crim. App. 2008); *see* TEX. R. EVID. 404(a). Such evidence, however, may be admissible for other purposes, such as proof of motive, intent, plan, knowledge, or lack of mistake or accident. TEX. R. EVID. 404(b). "Rebuttal of a defensive theory is also one of the permissible purposes for which evidence may be admitted under Rule 404(b)." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) (citing *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003)).

During opening statement, Harrison implied that Kaylie fabricated the allegations as a part of a plan to "to block [him] out" of her life because she was dating Owens and to obtain an unequal division of community property in their pending divorce. "Although a defensive opening statement is not itself evidence, it does inform the jury of 'the nature of the defenses relied upon and the facts expected to be proved in their support.'" *Bass v. State*, 270 S.W.3d 557, 563 n.7 (Tex. Crim. App. 2008) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.01). Accordingly, "a defense opening statement may open the door to the admission of extraneous-offense evidence to rebut defensive theories presented in that opening statement." *De La Paz*, 279 S.W.3d at 345; *see Bass*, 270 S.W.3d at 563.

During cross-examination of the witnesses, Harrison established the nature of Kaylie's relationship with Owens, Kaylie's request for additional community property after the incident, the mixed and inconclusive DNA test results, and his denial of the sexual assault. Harrison questioned Kaylie on how she managed to text Owens four times during the assault and proved that Kaylie's stepfather, who was a potentially biased party, was a deputy who had contacted the investigator before his arrival on the scene. Harrison also showed that Hill knew he had responded to Baggett's stepdaughter's home before entering the house. Harrison's line of questioning was designed to sway the jury into concluding that Kaylie had fabricated the allegations—a theory which Harrison solidified in his closing argument.

Although closing argument occurs after admission of an extraneous offense, it sheds light on the defensive theory. *See Bass*, 270 S.W.3d at 560–61. Thus, closing argument can be considered in our analysis when opening statements and cross-examination before admission of the extraneous evidence are in line with the defensive theory in closing. During closing, Harrison focused on the DNA test results and argued that he never sexually assaulted Kaylie. Instead, he claimed Kaylie was angry with Harrison, that this "was about a divorce and a woman that wanted an unequal property division," that "Kaylie and her boyfriend had a plan," and that the investigation was biased as a result of Baggett's relationship to Kaylie. The "plan" offered by Harrison implied that Kaylie had fabricated the assault for personal gain.

We find no abuse of discretion in the trial court's conclusion that Harrison opened the door to the extraneous bad act evidence by the time it was offered by the State. *See id.* at 563 (extraneous-offense evidence is admissible under Rule 404(b) to rebut a fabrication, frame-up, or

7

retaliation defense). However, "[t]o be admissible for rebuttal of a fabrication defense, '"the extraneous misconduct must be at least similar to the charged one."'" *Webb v. State*, 2019 WL 2147683, at *2 (Tex. App.—Waco May 15, 2019, no pet. h.) (quoting *Newton v. State*, 301 S.W.3d 315, 317 (Tex. App.—Waco 2009, pet. ref'd) (op. on remand) (quoting *Wheeler v. State*, 67 S.W.3d 879, 887 n.22 (Tex. Crim. App. 2002))). "The requisite degree of similarity is not exacting, and the extraneous conduct need only be sufficiently similar to the charged offense." *Id.* (citing *Dennis v. State*, 178 S.W.3d 172, 178 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); *Newton*, 301 S.W.3d at 317 ("Although some similarity is required, the requisite degree of similarity is not as exacting as necessary when extraneous-offense evidence is offered to prove identity by showing the defendants 'system' or modus operandi." (citations omitted))).

Harrison points to the differences between the two sexual assaults, including the fact that he did not use a deadly weapon or beat Duncan when sexually assaulting her, masturbated in her presence before assaulting her, and exhibited a different emotional state. Nevertheless, we find the extraneous sexual assault sufficiently similar to the charged offense. Kaylie and Duncan had both worked at the Telford Unit. Both victims were physically inferior to Harrison and were close to him since he was Duncan's supervisor and Kaylie's husband. Harrison increasingly harassed both victims prior to the assaults and had received assurances from them that they did not desire any romantic relationship with him. In committing the assaults, he cornered them, told them they could not escape, physically prevented their escape, and forced them to have sex with him. Additionally, Harrison used the same sexual position to penetrate their sexual organs and denied committing both assaults.

On these facts, we conclude that the trial court did not abuse its discretion in allowing the extraneous-offense evidence. Accordingly, we overrule Harrison's sole point of error on appeal.

## IV. Conclusion

We affirm the trial court's judgment.


Ralph K. Burgess
Justice


Date Submitted:     June 7, 2019
Date Decided:       July 10, 2019

Do Not Publish