

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-19-00118-CR

_____

WILLIE DEE PRICE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CR-19-26942

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Burgess

O P I N I O N

A Fannin County jury found Willie Dee Price guilty of aggravated sexual assault of Tammy, a child, and sentenced him to life imprisonment.[1] On appeal, Price argues that the trial court erred in failing to excuse veniremembers who could not consider the full range of punishment and in allowing the State to admit extraneous-offense evidence.[2]

We find that Price failed to preserve his first issue for our review. We also find that the trial court did not abuse its discretion by admitting the extraneous-offense evidence. As a result, we affirm the trial court's judgment.

## I.  Price Failed to Preserve His First Point of Error

Price argues that the trial court erred in failing to grant his challenges for cause to veniremembers who answered that they could not consider the minimum punishment for "the worst child sexual assault case [they could] imagine."[3] In total, veniremembers 15, 17, 18, 23, 27,

---

[1]To protect the identity of victims who were minors at the time of the alleged offenses, we will use a pseudonym for all parties in this case. *See* TEX. R. APP. P. 9.10(a)(3).

[2]Price also appeals from two additional convictions for aggravated sexual assault of a child in companion causes 06-19-00119-CR and 06-19-00120-CR.

[3]The State objected that the question was an improper commitment question that did not give rise to a challenge for cause. "Commitment questions are those that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact." *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). Where "the law requires jurors to make certain types of commitments," "the attorneys may ask the prospective jurors whether they can follow the law in that regard." *Id.* at 181. For example, because "[b]oth the State and defense are entitled to jurors who can consider the entire range of punishment for the particular statutory offense . . . *i.e.*, from the maximum to the minimum and all points in between," "both sides may question the panel on the range of punishment and may commit jurors to consider the entire range of punishment for the statutory offense." *Cardenas v. State*, 325 S.W.3d 179, 184 (Tex. Crim. App. 2010) (footnotes omitted) (citations omitted). "A question committing a juror to consider the minimum punishment is both proper and permissible." *Id.* (footnotes omitted) (citations omitted).

"However, where the law does not require the commitment, a commitment question is invariably improper." *Standefer*, 59 S.W.3d at 181. "To be proper, then, a commitment question must contain *only* those facts necessary to test whether a prospective juror is challengeable for cause." *Id.* at 182. "[C]ounsel veers into impermissible commitment questions when he attempts to commit a veniremember to consider the minimum sentence based on specific evidentiary facts." *Cardenas*, 325 S.W.3d at 184. This is because "an attorney cannot attempt to bind or

2

29, 30, 34, 35, 39, and 49 said that they could not assess the minimum sentence for "the worst child sexual assault case" they could "personally imagine." While several of these veniremembers were struck for cause by agreement, Price challenged the six remaining veniremembers for cause because they could not consider the full range of punishment in the "worst case" scenario. Price used his peremptory challenges to strike those six jurors and asked for additional peremptory strikes. In his first point of error, he argues that the trial court erred in refusing his challenges for cause.

The Texas Court of Criminal Appeals has made clear that

[e]rror is preserved for review . . . only if appellant (1) used all of his peremptory strikes, (2) asked for and was refused additional peremptory strikes, and (3) was then forced to take an identified objectionable juror whom appellant would not otherwise have accepted had the trial court granted his challenge for cause (or granted him additional peremptory strikes so that he might strike the juror).

*Buntion v. State*, 482 S.W.3d 58, 83 (Tex. Crim. App. 2016). Although Price established the first two requirements of error preservation, he failed to establish the third. Price requested additional peremptory strikes but only indicated that he would use one strike on veniremember 49, who was not seated on the jury.[4] Because Price failed to specifically identify any other veniremembers he

---

commit a prospective juror to a verdict based on a hypothetical set of facts." *Standefer*, 59 S.W.3d at 179 (quoting *Allridge v. State*, 850 S.W.2d 471, 480 (Tex. Crim. App. 1991)).

A question becomes "improper if it includes facts *in addition* to those necessary to establish a challenge for cause." *Id.* at 182. As an example,

a party may ask the potential juror if he could consider the minimum of five years' imprisonment in a murder case, but he may not ask if the juror could consider five years in prison in a case in which the State alleged that the defendant "tortured, garroted, poisoned, and pickled" the victim. The nonstatutory manner in which the defendant was alleged to have committed the offense adds evidentiary facts peculiar to the case on trial. That question, because it goes beyond the statutory elements and statutory manner or means, is improper under *Standefer*.

*Cardenas*, 325 S.W.3d at 184.

[4]Veniremembers 1, 4, 7, 8, 12, 13, 16, 20, 21, 31, 32, 36, and 48 (alternate) were seated on the jury.

3

wished to strike, the record fails to show that Price was forced to accept an objectional juror. As a result, error is not preserved.

We overrule Price's first point of error.

## II. The Trial Court Did Not Abuse Its Discretion by Admitting Extraneous-Offense Evidence

In his second point of error, Price argues that the trial court erred in admitting extraneous-offense testimony from four other witnesses who said Price sexually abused them when they were children. We disagree.

### A. Factual and Procedural Background

The evidence at trial showed that Price sexually assaulted a family member, Tammy, when she was a child. Tammy testified that Price had "rubb[ed] his penis with [her] vagina" several times when she was approximately four or five years old and discussed other sexually abusive acts committed by Price against her. Tammy kept Price's acts secret until she made a delayed outcry to her mother, Tiffany; her fiancée, Dan; and her brother, Zeke, when she was an adult.

Tiffany testified that Price moved in with them when Tammy was a young child. When Tammy was in the second grade, Tammy told Tiffany that Price was mean and had spanked her. As a result of Tammy's behavior, Tiffany felt that Price must have been rough in his discipline and told Price he was no longer welcome to live with them.

In opening statement, Price argued, "[I]t appears that the evidence will show that someone has just thrown something on the wall to see if something would stick here." Price (1) doubted the accuracy of Tammy's memory, (2) questioned why she had never told anyone about the alleged abuse until she reached adulthood, (3) challenged the timeframe of when the incidents occurred,

4

(4) argued that several of the alleged incidents must have taken place outside of Fannin County, (5) accused the investigating officer of doing "nothing to validate whether [witnesses] were telling the truth," (6) and stated that Tammy's memory of an incident where Price assaulted her over the sink while looking out of a window in the room presented "a physics problem" based on the location of the window.

During cross-examination, Tiffany said that before she kicked Price out of the home, Tammy and Zeke both denied that Price had committed any act other than spanking them. Tiffany could not remember the exact time of Tammy's outcry or the details of the outcry. Cross-examination also showed that Tammy had been inconsistent about the timeline and physical location of the alleged abusive acts. To challenge Tammy's credibility, Tiffany, Dan, and Zeke were all asked why Tammy had made no outcry until adulthood.

Price also challenged Tammy's credibility directly by showing that Tammy added allegations of abuse several times during the investigation. When asked about reporting additional abusive acts in successive interviews, Tammy testified that she did not know why it had taken her so long to remember the additional incidents. Tammy admitted that she was unaware of when some of the incidents had occurred and appeared shaky on whether they happened in the bedroom or the bathroom of her house.

After hearing this evidence, the State moved to admit the testimony of four other witnesses who had suffered Price's sexually abusive acts when they were children. Outside of the jury's presence, the trial court heard testimony from Polly, Wayland, Sarah, and Amanda, who were all related to Price by blood or marriage.

5

Polly testified that Price sexually abused her "probably . . . every night, every other night," from the time she was two until she was fifteen. Polly said Price's acts included touching her vagina, trying to "rape" her, and making her kiss his penis. Wayland testified that Price attempted anal sex with him when he was eight or nine years old. Sarah testified that when she was eight or nine, Price rubbed the skin of her private area. Amanda testified that Price "directed" her to his exposed penis when she was seven or eight. The trial court overruled Price's objections that the testimony was irrelevant, "unduly cumulative," "far remote from the alleged allegations," and "prejudicial."

## B. Standard of Review

"[A] trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse-of-discretion standard." *Bradshaw v. State*, 466 S.W.3d 875, 878 (Tex. App.—Texarkana 2015, pet. ref'd) (quoting *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011)). "A trial court does not abuse its discretion if the decision to admit evidence is within the 'zone of reasonable disagreement.'" *Id*. (quoting *Marsh v. State*, 343 S.W.3d 475, 478 (Tex. App.—Texarkana 2011, pet. ref'd)). "If the trial court's decision on the admission of evidence is supported by the record, there is no abuse of discretion, and the trial court will not be reversed." *Id*. (quoting *Marsh*, 343 S.W.3d at 478). "In determining whether the trial court abused its discretion, '[w]e may not substitute our own decision for that of the trial court.'" *Id*. (quoting *Marsh*, 343 S.W.3d at 478).

## C.     Admissibility of Certain Prior Offenses

By statute, when a defendant is tried for a sexual offense committed against a child under seventeen years of age, the State may, notwithstanding Rules 404 and 405 of the Texas Rules of Evidence, introduce evidence that the defendant has committed a separate sexual offense against another child "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant."  TEX. CODE CRIM. PROC. ANN. art. 38.37, §§ 1–2.  Thus, in cases like the one before us, Article 38.37 "permits the introduction of evidence 'in a trial of a defendant for the enumerated sexual crimes against children . . . that the defendant has committed certain offenses against a *nonvictim* of the charged offense.'" *Harty v. State*, 552 S.W.3d 928, 933 (Tex. App.—Texarkana 2018, no pet.) (quoting *Belcher v. State*, 474 S.W.3d 840, 844 (Tex. App.—Tyler 2015, no pet.)).

However, "the admission of evidence under Article 38.37 'is limited by Rule 403's balancing test, which permits admission of evidence as long as its probative value is not substantially outweighed by its potential for unfair prejudice.'" *Fahrni v. State*, 473 S.W.3d 486, 492 (Tex. App.—Texarkana 2015, pet. ref'd) (quoting *Bradshaw v. State*, 466 S.W.3d 875, 882 (Tex. App.—Texarkana 2015, pet. ref'd)).  When conducting a Rule 403 balancing test, the court

> must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

7

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). In any given case, "these factors may well blend together in practice." *Id*. at 642.

### D. Analysis

With respect to the first factor in the balancing test, Price argues that the extraneous offenses were irrelevant and had no probative force because they were remote in time to the allegations in the indictment. We disagree. Evidence of a separate sexual offense against a child admitted under Article 38.37 is probative on the issues of intent and a defendant's character or propensity to commit sexual assaults on children.[5] *See Bradshaw*, 466 S.W.3d at 883; TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b). Here, the evidence was especially probative of Price's propensity to sexually assault children who were members of his family by relation or marriage.[6] We conclude that this factor weighed strongly in favor of admission.

As to the second factor, in his opening statement and during cross-examination of witnesses, Price challenged Tammy's credibility and memory about allegations resulting from her late outcry. By adopting Article 38.37, Section 2, the Legislature recognized that in child sex

---

[5]Therefore, we overrule Price's argument that the testimony was irrelevant. We also note that it is unclear whether Price raises a Rule 404(b) argument on appeal. To the extent that he does, Price's argument is overruled because it does not comport with the objections raised at trial. *See Garcia v. State*, 553 S.W.3d 645, 648 (Tex. App.—Texarkana 2018, pet. ref'd) (quoting *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012)). Moreover, Article 38.37 evidence is admissible notwithstanding Rule 404(b). TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b).

[6]"Remoteness of an extraneous offense is properly considered in determining whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." *Harty*, 552 S.W.3d at 935 (citing *Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd) (concluding that the "remoteness of the extraneous-offense evidence significantly lessens its probative value" but finding the twenty-five-year-old extraneous offense admissible)). However, we do not believe here that the "remoteness of the extraneous offenses rendered the probative value of this evidence so weak as to render this evidence inadmissible under Rule 403." *Id*. This is because the Texas Rules of Evidence "favor the admission of all logically relevant evidence for the jury's consideration." *Montgomery v. State*, 810 S.W.2d 372, 375 (Tex. Crim. App. 1990) (op. on reh'g).

offenses, "there is typically very little evidence to assist prosecutors with proving their cases." *Bradshaw*, 466 S.W.3d at 884 (quoting Senate Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 12, 83d Leg., R.S. (2013)). Because there was no biological evidence and there were no third-party eyewitness to the alleged incidents, and because Price challenged Tammy's credibility and memory, the State had a considerable need for the evidence. "Rule 403 'should be used sparingly to exclude relevant, otherwise admissible evidence that might bear on the credibility of either the defendant or complainant in such 'he said, she said' cases [involving sexual assault].'" *Id*. at 883–84 (alteration in original) (quoting *Hammer v. State*, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009)). Accordingly, the second factor also weighed in favor of admission.

With respect to the third factor, we recognize that the inherently inflammatory and prejudicial nature of evidence of Price's extraneous sexual offenses against children does tend to suggest a verdict on an improper basis. *See Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd). Thus, the third factor weighed against admission.

As to the fourth factor, the ultimate issues in this case were whether Price had committed the acts of sexual abuse against Tammy as alleged in the State's indictment. The trial court mitigated the tendency of the extraneous-offense evidence to confuse or distract the jury from the main issues at trial by its charge. Specifically, the trial court identified for the jury the elements the State was required to prove by its indictment and instructed the jury that it could consider the extraneous-offense evidence only if it found Price had committed the extraneous offenses beyond a reasonable doubt, and then, if it made that finding, that it could only consider the evidence for its bearing on matters relevant to determining whether Price committed the acts alleged in the

9

indictment. Because the jury was redirected to the main issues in the case, we find the fourth factor weighed in favor of admission.

The fifth factor refers to evidence such as highly technical or scientific evidence that might mislead the jury because it is not equipped to weigh the probative force of the evidence. *See Gigliobianco*, 210 S.W.3d at 641. Here, the evidence in question was neither scientific nor technical and pertained to matters, including victim credibility, that could easily be understood by a jury. We find the fifth factor weighed in favor of admission.

As to the last factor, the extraneous-offense direct testimony comprised approximately twenty-six pages of transcript in a multi-day trial. In addition to testimony by Polly, Wayland, Sarah, and Amanda, the State presented testimony from seven other witnesses. We find that the presentation of the extraneous-offense evidence did not consume an inordinate amount of time. On this record, we conclude that the last factor favored admission.

We find that the trial court, after balancing the Rule 403 factors, could have reasonably concluded that the probative value of the extraneous-offense evidence was not substantially outweighed by the danger of unfair prejudice and the other factors in the rule. Consequently, we find that the trial court did not abuse its discretion in admitting the extraneous-offense evidence. We overrule Price's last point of error.

### III.     Conclusion

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:     December 5, 2019
Date Decided:       December 9, 2019

Publish

11