# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-23-00384-CR

**Michael David Holler, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE 277TH DISTRICT COURT OF WILLIAMSON COUNTY
NO. 19-0482-K277, THE HONORABLE STACEY MATHEWS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After a bench trial, the district court convicted appellant Michael David Holler of aggravated sexual assault of a child and sentenced him to forty-five years' imprisonment. *See* Tex. Penal Code § 22.021(a)(2)(B). On appeal, Holler contends that the district court erred by admitting testimony about an extraneous offense over his objection that the evidence was unfairly prejudicial. We will affirm the judgment of conviction.

## BACKGROUND

The State indicted Holler for the first-degree felony offense of aggravated sexual assault of T.C.,[1] a child then younger than age 14, by intentionally and knowingly causing T.C.'s

---

[1] We refer to the crime victim using only initials in the interest of privacy. *See* Tex. Const. art. I, § 30(a)(1) (recognizing crime victim's right to privacy throughout criminal justice process); Tex. R. App. P. 9.10(a)(3) (classifying as sensitive data "the name of any person who was a minor at time the offense was committed"); (b) (prohibiting court documents filed in criminal cases from containing sensitive data).

sexual organ to contact Holler's sexual organ. Holler waived his right to a jury, and the case proceeded to a bench trial. The district court heard testimony from Casey Daley, a former lead detective with the Williamson County Sheriff's Office (WCSO); Deb Kleypas, a sexual assault nurse examiner (SANE); T.C., and Donald Ray Davidson, owner of a house that Holler previously leased. Two weeks before trial, the district court also heard testimony alleging Holler's extraneous offense as to another victim, D.H.B. *See* Tex. Code Crim. Proc. art. 38.37.

**Evidence of offense against T.C.**

Detective Daley testified that she was part of the WCSO child-crimes unit in November 2018 when she was assigned to investigate the case arising from fourteen-year-old T.C.'s outcry of sexual assault by Holler. Daley scheduled T.C.'s interview at the Child Advocacy Center and an appointment for an exam with a SANE. After three months of investigation, Daley requested a warrant for Holler's arrest.

Nurse Kleypas, forensic nurse coordinator and certified SANE for the Williamson County Children's Advocacy Center, examined T.C. on November 19, 2018, and testified about the patient history obtained when only she and T.C. were present. T.C., who denied being sexually active, disclosed that "two years ago in September," when she was twelve years old, her "dad's old friend," Holler, raped her. She was babysitting, and after she had put Holler's daughters to sleep, Holler began tickling her. T.C. asked him to stop, but he did not. Holler grabbed T.C. by her arm and pulled her into his daughter's bedroom, where he took T.C.'s pants and panties off and then removed his pants. Holler pushed T.C. down on the bed, got on top of her, and put his penis into her vagina. Holler told T.C. that if she told anyone, he would make sure it happened again, which is why T.C. delayed telling her mother about it. T.C. denied that

2

anything like this had happened to her before. T.C.'s physical exam revealed a healed, complete tear of the hymenal tissue, consistent with her reported history of sexual assault.

T.C., who was eighteen when this case was tried, testified that she lived with her mother and that her biological father had been in and out of her life. Her biological father's best friend was Holler. T.C. liked and trusted Holler, whom she called "Uncle Mike." When T.C. was twelve years old and her brother was thirteen or fourteen, their family lived about two minutes away from Holler. T.C. was friends with Holler's older child and sometimes babysat for Holler's two youngest children.

T.C. recalled that on the day of the offense, which was a month or two after July 2016, she went to babysit and her brother went to mow the lawn at Holler's house. Holler's wife and oldest child were not home. After T.C. got Holler's children to bed, Holler entered the living room and began tickling T.C.'s sides and inner thighs. T.C. could hear the mower running outside when Holler started tickling her. T.C. told Holler to stop and tried to use her hands to move his hands away from her.

Holler then grabbed T.C.'s arm and pulled her into his oldest child's bedroom, where he threw T.C. onto the bed and pushed her onto her back. Holler held her down with his arm on her chest and hand over her mouth as he used his other hand to remove his pants. Holler kissed T.C.'s lower stomach by her "belly button" and pulled down her pants and her panties. T.C. tried to push him away. She asked him to stop five or six times. He told her not to say anything and covered her mouth again. Pulling T.C.'s legs toward him at the edge of the bed, Holler then put his penis in T.C.'s vagina. While this was happening, the mower was still running outside. When the lawnmower stopped, Holler let T.C. go. As they both dressed, Holler

told T.C. that if she told anyone, he would make sure it would happen again. T.C. went back to the children's room until her brother entered the house, and she called their mother to go home.

T.C. was scared and for several years did not tell anyone what happened. Even after Holler moved away, T.C. was fearful that something might happen because he knew where she lived. In November 2018, when T.C. was fourteen years old, she was in the car with her brother and mother who were discussing that Holler was a registered sex offender. While still in the car, T.C. decided to tell her mother about being sexually assaulted by Holler but did not want her brother to hear, so she texted her mother about it. Sometime afterward, law enforcement was notified, and a deputy arrived at T.C.'s house to take her statement. T.C. gave an interview at the Child Advocacy Center and underwent a physical examination by a SANE. At the end of her testimony, T.C. identified Holler in the courtroom.

**Extraneous-offense evidence from D.H.B.**

Next, the State called D.H.B.—who had already testified at a pretrial hearing pursuant to Texas Code of Criminal Procedure 38.37—to testify again about Holler's extraneous offense. Holler renewed his objection that the testimony was more unfairly prejudicial than probative and should be excluded due to the remoteness and dissimilarity of the extraneous offense. *See* Tex. R. Evid. 403. The district court overruled the objection to D.H.B.'s testimony. Further, because D.H.B. had testified and was cross-examined, the district court indicated that having her testify again was unnecessary and said that it would consider the prior testimony.

During that pretrial hearing, D.H.B. testified that she and Holler met in the 1990's when she was twelve and he was seventeen or eighteen. Holler lived with D.H.B.'s best friend, J., and J.'s mother. D.H.B. visited J.'s home frequently. Holler sexually assaulted D.H.B. in

4

March 1998, when she was thirteen and he was eighteen. D.H.B. recalled that she and Holler were alone in his bedroom when he kissed her on the lips. While D.H.B. was lying on her back in bed, Holler began undoing her pants, and she asked him to stop. Holler shushed her and said it was going to be okay. He unzipped her pants and then his, pulled her pants down, and got on top of her. Holler then penetrated D.H.B.'s vagina with his penis. She asked him to stop several times. Holler stopped and got off D.H.B. quickly when J. opened the bedroom door from her adjoining room, turned around, and walked back out. D.H.B. pulled her clothing back up and stayed in bed awake as Holler fell asleep. In the morning, D.H.B. went to J.'s room and told her about the sexual assault. J. insisted that they tell J.'s mother, who kicked Holler out of the house.

Holler argued to the court that the case hinged on T.C.'s credibility and that her memory was unreliable. He called the final witness during the bench trial, Donald Ray Davidson, who testified that he was the owner of a house that he leased to Holler from about June 2014 until the end of June 2016. Davidson identified the house's address, which was the same one listed in the indictment and where T.C. testified that Holler sexually assaulted her. Davidson stated that Holler did not live at that address as of July 1, 2016. During closing, Holler noted although T.C. alleged that the sexual assault happened in September 2016 at the house identified in the indictment, that could not have happened as she said because he moved out of that house months earlier in June.

**Judgment and punishment**

Closing arguments proceeded. Based on the evidence, the district court found Holler guilty of aggravated sexual assault of a child as charged in the indictment. During the punishment phase of trial, the district court heard testimony from D.H.B. and Holler's mother;

5

admitted evidence of Holler's previous convictions for false report and failure to register as a sex offender; and listened to closing arguments. Afterward, the district court assessed Holler's punishment at forty-five years' imprisonment.

## DISCUSSION

Holler contends that the district court erred by overruling his Rule 403 objection to D.H.B.'s testimony about Holler's prior extraneous offense. We review a trial court's decision to admit or exclude extraneous offense evidence under an abuse-of-discretion standard. *Perkins v. State*, 664 S.W.3d 209, 217 (Tex. Crim. App. 2022); *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). A trial court abuses its discretion if its ruling is so clearly wrong as to lie outside the zone of reasonable disagreement. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). We uphold a trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005); *see also Perkins*, 664 S.W.3d at 217 (cautioning that when reviewing trial court's Rule 403 balancing-test determination, appellate court reverses trial court's judgment "rarely and only after a clear abuse of discretion" (quoting *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999))).

The State presented D.H.B.'s testimony under subsection 2(b) of article 38.37, which applies in prosecutions for certain sexual offenses, including sexual assault of a child, and authorizes admission of evidence showing that the defendant committed a separate sexual offense, "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." Tex. Code Crim. Proc. art. 38.37, § 2(b); *Robisheaux v. State*, 483 S.W.3d 205, 210 (Tex. App.—Austin

6

2016, pet. ref'd). But under Texas Rule of Evidence 403, even relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, or misleading the jury; by considerations of undue delay; or by needless presentation of cumulative evidence. Tex. R. Evid. 403.

When considering a Rule 403 objection, the trial court must balance: (1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable (probative force); (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and (4) the proponent's need for the evidence. *Perkins*, 664 S.W.3d at 217; *see Gigliobianco v. State*, 210 S.W.3d 637, 641, 642 (Tex. Crim. App. 2006) (defining "probative force" and addressing factors of Rule 403 analysis with greater detail).

As to the first factor, Holler contends that the probative force of the extraneous offense was weak because it was remote and dissimilar from the charged offense. *See Gaytan v. State*, 331 S.W.3d 218, 226 (Tex. App.—Austin 2011, pet. ref'd) (noting that remoteness reduces probative value of extraneous offense because passage of time allows things and people to change). Although the extraneous offense occurred in 1998, eighteen years before the charged offense, that time span alone does not deplete the probative value of the evidence. *See, e.g.*, *Dies v. State*, 649 S.W.3d 273, 285 (Tex. App.—Dallas 2022, pet. ref'd) (concluding that evidence of extraneous child sexual abuse that "began approximately 19 years before trial" was not inadmissible); *Deggs v. State*, 646 S.W.3d 916, 925-26 (Tex. App.—Waco 2022, pet. ref'd) (concluding that extraneous offense from 1998, eighteen years before charged offense in 2016, was not inadmissible but probative of defendant's character or propensity to commit indecent

7

acts with children around age of victim in charged offense and that "this factor weighed strongly in favor of admission"); *Robisheaux*, 483 S.W.3d at 219 (concluding that extraneous offense from twelve years before charged offense was admissible and noting that "remoteness is not the only factor to consider when analyzing the probative value of evidence of an extraneous offense"). Moreover, while some aspects of the two offenses differed, there were also significant similarities, including that D.H.B. was thirteen at the time of the extraneous offense and T.C. was twelve at the time of the charged offense; Holler knew D.H.B. and T.C. for some time before the offenses; both offenses involved Holler penetrating the child with his penis on a bed; both D.H.B. and T.C. said "no" to Holler and asked him to stop; and both offenses ended only when Holler was discovered or anticipated being discovered by another person. Thus, the district court could have reasonably determined that the probative force of the extraneous-offense evidence was strong and weighed in favor of admission.

As to the second factor, the potential of the evidence to impress the factfinder in some irrational, but nevertheless indelible way, Holler contends that this evidence tended to suggest a decision on an improper basis, and he speculates that if the district court doubted his guilt as to the charged offense, the court might have been led to convict him solely because of the extraneous one. However, article 38.37 expressly authorizes admission of evidence showing that the defendant committed a separate sexual offense, "*for any bearing* the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." Tex. Code Crim. Proc. art. 38.37, § 2(b) (emphasis added). Evidence of Holler's prior sexual assault of a minor was probative of his propensity to sexually assault children. *See Alvarez v. State*, 491 S.W.3d 362, 371 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (noting that "Rule 403 balancing test normally will not favor the exclusion of

8

evidence of the defendant's prior sexual assaults of children" that was admitted under article 38.37 § 2(b)); *Belcher v. State*, 474 S.W.3d 840, 848 (Tex. App.—Tyler 2015, no pet.) (concluding that evidence of prior sexual abuse of children admitted under article 38.37 § 2(b) "was especially probative of Appellant's propensity to sexually assault children"). Additionally, potential prejudice may be mitigated when, as here, the extraneous acts are no more serious than the allegations that are the basis for the charged offense. *See Robisheaux*, 483 S.W.3d at 220 (noting that although extraneous-offense testimony might have had tendency to suggest decision on improper basis because testimony pertained to previous sexual assault of minor, this potential was ameliorated somewhat because sexual-misconduct testimony "discussed actions that were no more serious than the allegations forming the basis for the indictment"). Thus, the second factor weighs in favor of admission because article 38.37 expressly allows such evidence in prosecutions for sexual assault of a child and the admitted extraneous-offense evidence was no more serious than the charged offense.

As to the third factor—the time needed to develop the evidence during which a jury would be distracted from consideration of the indicted offense—Holler acknowledges that he waived a jury, the presentation of the evidence was efficient, and the district court did not require D.H.B. to testify during the guilt-innocence phase after she testified at the pretrial hearing. Holler does not dispute that this factor weighs in favor of admissibility.

As to the fourth factor, Holler contends that the State's need for that evidence was minimal because this was not entirely a "she said, he said" question for the court. He points to nurse Kleypas's testimony about her findings from T.C.'s SANE exam; specifically, a complete tear of T.C.'s hymenal tissue. Nevertheless, that injury was noted two years after the 2016 sexual assault and lacks the same force of proof as DNA or SANE exam evidence taken closer in

9

time after an assault. There were no witnesses to the sexual assault besides T.C. and Holler. Moreover, Holler sought to discredit T.C.'s testimony about the timing and location of that assault with his former landlord's testimony that Holler stopped living in the house as of July 1, 2016. This challenge to T.C.'s credibility increased the State's need for the extraneous-offense evidence. S*ee Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd) (concluding that extraneous-offense evidence was probative to rebut defensive theory of fabrication). Thus, the district court could have determined that the State's need for this evidence was considerable and weighed in favor of admission.

All the Rule 403 balancing factors favored admission of the extraneous offense. Accordingly, we conclude that the district court did not abuse its discretion by overruling Holler's Rule 403 objection to D.H.B.'s testimony and determining that the probative value of the extraneous-offense evidence was not substantially outweighed by the danger of unfair prejudice. We overrule Holler's appellate issue.

## CONCLUSION

We affirm the district court's judgment of conviction.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed: August 28, 2024

Do Not Publish