# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00356-CR

---

**Christopher Joe Bradshaw, Sr., Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. CR2019-435, THE HONORABLE DIB WALDRIP, JUDGE PRESIDING

---

## O P I N I O N

Bradshaw appeals his continuous sexual abuse of a young child conviction in four issues.  He argues (1) the State failed to adequately prove the abuse was continuous.  And he argues that the trial court erred in (2) assessing his sentence at automatic life imprisonment; (3) failing to adequately charge the jury on the duration element of the offense; and (4) admitting extraneous-offense evidence.  Finding that the evidence was sufficient and that the trial court did not so err, but finding that the judgment lists an incorrect enhancement statute subsection, we modify the court's judgment to list the correct enhancement statute subsection and affirm as modified.

**BACKGROUND**

Bradshaw, C.B.'s[1] father, came to live with C.B., as well as C.B.'s mother, stepfather, older brother, and baby sister, in a trailer in Comal County. C.B. was ten, about to turn eleven at the time—the summer of 2018. Bradshaw slept in a room with C.B. (and sometimes his older brother T.B.), on mattresses on the floor which had been pushed together. Bradshaw began showing C.B. pornography and sexually abusing him. He did so in the bedroom, after waking C.B. up, and he did so in the living room. In October 2018, Bradshaw moved back to Oklahoma to marry his girlfriend Tabatha.

In early December 2018, Tabatha contacted C.B.'s mother to let her know she had found disturbing images on Bradshaw's Facebook accounts and was concerned about C.B. C.B.'s mother then questioned C.B.; C.B. admitted that Bradshaw had sexually touched him but did not elaborate. C.B.'s mother contacted the police, and C.B. was interviewed at the Child Advocacy Center, where he made a full outcry that Bradshaw engaged him in masturbation, fondling, and oral sex. He also drew a picture showing Bradshaw had ejaculated all over his and T.B.'s room and the living room. As part of the investigation, police collected samples, but testing turned up no semen. Bradshaw, when interviewed, admitted to possessing child pornography, and using it to masturbate in the boys' room when they were at school, but he denied abusing C.B.

Bradshaw was indicted for, among other things, continuous sexual abuse of a child. At trial, C.B. testified. So did his interviewer at the Child Advocacy Center. Exhibits admitted included a redacted video of Bradshaw's statement, and evidence collected from Bradshaw's gold

---

[1] The child is referred to in one brief as C.W., and the other as W.C. The indictment and jury charge refer to the child as C.B., as do we, while recognizing that those initials do not comport to the child's chosen name. *See* Tex. R. App. P. 9.10(a)(3) (providing privacy protection for sensitive data in criminal cases, including name of any person who was minor at time of offense).

Galaxy phone, which he had left behind in Comal County and which showed searches for and downloads of pornography, including some apparent child pornography. Another exhibit consisted of a judgment of conviction in Oklahoma for "lewd molestation," an offense the trial court found "substantially similar" to the Texas offense of indecency with a child by contact.

Bradshaw tried to discredit C.B., in part by pointing to the inconsistency between C.B.'s drawing of Bradshaw's ejaculate and the DNA test results. The jury convicted Bradshaw who, because of that prior conviction from Oklahoma, was sentenced to automatic life in prison.

## ANALYSIS

### *Sufficiency to Prove the Abuse Was Continuous*

Bradshaw argues there is no way the abuse was continuous (lasting at least 30 days) because (1) Bradshaw did not arrive in Comal County until June 16, 2018; (2) C.B. testified that he was 10 when the abuse occurred; and (3) C.B. turned 11 on June 19, 2018.

#### *Applicable Law and Standard of Review*

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979). In assessing the sufficiency of the evidence to support a criminal conviction, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

3

*Application*

A person commits an offense of continuous sexual abuse of a young child if during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse (including indecency with a child by the sexual conduct of touching the child's genitals) and at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense. Tex. Penal Code §§ 21.02, .11. Bradshaw only complains about the sufficiency of the evidence to prove the duration element.

As Bradshaw recognizes, the parties agreed that he arrived in Comal County "no sooner than June 16, 2018," and that C.B. turned eleven on June 19, 2018. To prove that the alleged abuse could only have taken place during those four days, Bradshaw points to the following testimony:

> Q. How often did that happen, [C.B.]?
>
> A. Not too often.
>
> Q. Okay. Do you remember the first time?
>
> A. Yes.
>
> Q. Do you remember how old you were the first time?
>
> A. I was ten.
>
> Q. Do you remember how old you were the last time?
>
> A. Ten.

Bradshaw notes this testimony comports with what C.B. said during his interview at the Child Advocacy Center—that the abuse occurred before he turned 11.

4

But, looking at C.B.'s complete testimony, the jury was free to infer that in the above exchange, C.B. was telling the prosecutor about when Bradshaw "would ask if—if he could suck my penis." C.B. also testified that other sexual conduct occurred "sometimes," and "about once or twice—every once in a while," and "[m]aybe weekly." The "maybe weekly" was C.B.'s answer to the prosecutor's question about how often Bradshaw would touch his penis, conduct that satisfies the sexual abuse, indecency with a child, charged in the indictment. *See Garrett v. State*, 693 S.W.3d 490, 496–97 (Tex. App.—Houston [14th Dist.] 2023, pet. ref'd) (noting courts give wide latitude to testimony of child sexual abuse victims, and child victim's description of what happened and when it occurred need not be expressed with same level of sophistication and detail that adult might use).

Circumstantial evidence, too, supported the duration element. C.B. also testified that Bradshaw showed him pornography, on his gold Galaxy phone, "[l]ike maybe once or twice a day," and he would "jerk off" and ask C.B. to participate, and "[s]ometimes I would say yes. Sometimes I would say no." C.B. specifically remembered being shown photos of "posing" teenage boys and girls, "approximately like 15, 14, 18" and videos of "women doing sexual acts" with other women.

Testimony from Comal County Sheriff's Office Sergeant Christopher Garza, DPS forensic scientist Kristina Hegstrom, and CAC forensic interviewer Susan White and physical exhibits corroborated C.B.'s testimony.

Sergeant Garza testified that he collected Bradshaw's gold Galaxy phone from C.B.'s mother. During his testimony, part of his interview with Bradshaw was admitted and published to the jury. In it, Bradshaw admitted there were nude images of children on the cell phone, initially said his sons had put the images on the phone, but later admitted the images were

5

his, and he would use them to masturbate. Garza obtained Bradshaw's Google records and testified that from June 23, 2018, into September 2018, Bradshaw had searched for child pornography with various prompts like, "sexy teenagers, sexy preteenagers, young eight-year-old girls," and "13-year-old sluts; young, sexy 12-year-old girls, bikini; 12-year-old girls, bikini; and then videos of lesbians." He found photographs of "nude, prepubescent teens" in folders titled "nude preteens and young adults," "porn," and "young, sexy bitches."

Hegstrom likewise testified that the gold Galaxy phone contained a search history with terms connected to child pornography such as "13- to 16-year-olds, nude or naked family pictures, naked kids, young." She testified that it also contained downloads, "several images that I included—that I tagged and essentially included in my final report that I, based on my experience, thought could possibly be considered child pornography."

The trial court admitted a portion of the data downloaded from the phone into evidence as a sealed exhibit available to the jury. Three of the images were shown to the jury— one of possible "child pornography," one of "possible underage prepubescent girls," and another containing "two women."

White testified that C.B. told her, in the interview at the CAC, that Bradshaw showed him "naked pictures and porn videos"; "masturbated in front of him" and asked C.B. to do so as well; "jacked him off"; performed oral sex on C.B.; and had C.B. perform oral sex on him. She also said that C.B. told her "that for the time that it went on, it happened basically every night." She also testified that children have a different sense of time than adults do, and "It's very difficult to get a kid to pin down a time frame." Because they are not in charge of their own schedules, they "don't pay attention to times." *See Perez v. State*, 689 S.W.3d 369, 378 (Tex. App.—Corpus Christi–Edinburg 2024, no pet.) (noting legislature created offense of continuous

6

sexual abuse in response to need to address sexual assaults against young children who are normally unable to identify exact dates of offenses when there are ongoing acts of sexual abuse).

Taken together, the evidence in this case allowed the jury to draw a reasonable inference that multiple acts occurred over a period of at least 30 days. *Hooper*, 214 S.W.3d at 13. We overrule Bradshaw's sufficiency complaint.

### Mandatory Life Sentence as Contrary to Section 12.42 of the Penal Code

Bradshaw argues that his sentence was illegal because his judgment reflects a conviction under section 21.02(b), enhanced under subsection 12.42(c)(2)(B), which is impossible because subsection 12.42(c)(2)(B) does not provide for enhancement for an offense under section 21.02.

### Applicable Law and Standard of Review

A sentence that is outside the maximum range of punishment is unauthorized by law and therefore illegal. *Ex parte Parrott*, 396 S.W.3d 531, 542 (Tex. Crim. App. 2013). "There has never been anything in Texas law that prevented any court with jurisdiction over a criminal case from noticing and correcting an illegal sentence." *Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003). A claim that a sentence is illegal may be raised "at any time." *Ex parte Rich,* 194 S.W.3d 508, 511 (Tex. Crim. App. 2006). Whether a sentence exceeds the range of punishment authorized by statute is a question of statutory construction that we review de novo. *See Yazdchi v. State*, 428 S.W.3d 831, 837 (Tex. Crim. App. 2014) (statutory construction is question of law so appellate review is de novo).

*Application*

Two statutes are at issue here. First, there is subsection 21.02(h), setting out the punishment range for an offense of continuous sexual abuse of a young child. "An offense under this section is a felony of the first degree, punishable by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years." Tex. Penal Code § 21.02(h). Second, there is section 12.42, setting out penalties for repeat offenders. Applicable here is not subsection 12.42(c)(2)(B) listed in the judgment—which Bradshaw correctly points out cannot apply here—but subsection 12.42(c)(4) which provides in part that,

- If it is shown on the trial of a sexually violent offense (including as is relevant here, continuous sexual abuse of a young child) committed by the defendant on or after the defendant's 18th birthday,

- that the defendant has previously been finally convicted of an offense that was committed under the laws of another state and that contains elements that are substantially similar to the elements of a sexually violent offense (including as is relevant here, indecency with a child younger than 17 years of age by sexual contact), then

- the defendant shall be punished by imprisonment in the Texas Department of Criminal Justice for life without parole.

*Id.* § 12.42(c)(4), (h); Tex. Code Crim. Proc. art. 62.001(6)(A). Because the jury convicted Bradshaw of continuous sexual abuse of a young child, and it was shown at trial that he had previously been finally convicted of an Oklahoma offense that contains elements that are substantially similar to the elements of indecency with a child younger than 17 years of age by sexual contact, Bradshaw was appropriately punished by imprisonment in the Texas Department of Criminal Justice for life without parole. The trial court orally pronounced the sentence as "judgment for life, which the statutes also require is without parole . . . . that is the sentence of the Court."

We overrule Bradshaw's illegal sentence complaint and modify the judgment to correct the enhancement portion of the "Statute for Offense" to Texas Penal Code 12.42(c)(4). *See* Tex. R. App. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (appellate court has power to modify judgment to speak truth when it has necessary information to do so).

### *Jury Charge's Failure to Specify That the Two Underlying Sexual Acts Must Occur 30 or More Days Apart*

Bradshaw argues that he suffered egregious harm from the application paragraph in the court's charge to the jury, which he contends did not require the jury to find that the two underlying sexual acts must occur 30 or more days apart.

#### *Applicable Law and Standard of Review*

We must review all alleged jury-charge error, regardless of preservation in the trial court. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). The first question in analyzing a jury-charge issue is whether the charge contains error. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Then, if the charge contains error, we analyze that error for harm. *Id*. Jury-charge error requires reversal for "some harm" if the defendant objected or "egregious harm" if the defendant did not. *Id.* at 743–44.

#### *Application*

The application charge provided, in relevant part,

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the Defendant, Christopher Joe Bradshaw, Sr., on or about the 19th day of June, 2018, through on or about the 15th day of October, 2018, during a period that was 30 days or more in duration, in the County of Comal and State of Texas, did commit two or more acts of sexual abuse against C.B., as alleged in Count I of the indictment . . .

9

Some of our sister courts have held that an instruction that mirrors the statute, as this one does, does not adequately convey to the jury the requirement that at least two of the acts of abuse must be separated by 30 days. *See, e.g.*, *Turner v. State*, 573 S.W.3d 455 (Tex. App.—Amarillo 2019, no pet.). Some have held that it does. *See, e.g.*, *Lewis v. State*, 693 S.W.3d 453 (Tex. App.—Houston [14th Dist.] 2023, pet. ref'd). Some commentators have suggested language requiring the jury to find that "the last act of sexual abuse occurred on or after the twenty-ninth day after the day the first act of sexual abuse occurred." *See* 8 Michael J. McCormick, et al., Tex. Practice, *Texas Criminal Forms and Trial Manual* § 115.5 (11th ed. 2025).

We are not persuaded that the challenged charge language allowed the jury to convict Bradshaw if it determined that he committed at least two acts of sexual abuse within a period of less than thirty days. As recognized by the Texas Court of Criminal Appeals,

> The statutory language reflects that the Legislature intended to permit one conviction for continuous sexual abuse based on the repeated acts of sexual abuse that occur over an extended period of time against a single complainant, even if the jury lacks unanimity as to each of the particular sexual acts or their time of occurrence, so long as the jury members agree that at least two acts occurred during a period that is thirty or more days in duration.

*Price v. State*, 434 S.W.3d 601, 605–06 (Tex. Crim. App. 2014). According to the charge in this case, jurors could only convict if these acts of sexual abuse occurred during a period of thirty or more days in duration—i.e., the individual acts of sexual abuse—whichever ones the individual jurors believed happened—which necessarily must have occurred thirty or more days apart. *See Lewis*, 693 S.W.3d at 464.

We conclude that the charge, which correctly tracked the statutory language, was not error. *See Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996) ("Following the

10

law as it is set out by the Texas Legislature will not be deemed error on the part of a trial judge."). We overrule Bradshaw's jury-charge issue.

### *Admission of Article 38.37 Evidence*

Bradshaw argues that the trial court erred in admitting evidence of the Oklahoma conviction for Lewd Molestation (fondling the breast of a child under age 16) under article 38.37 and Rule 403 because the conviction was old and not like the ones for which he was on trial.

#### *Applicable Law and Standard of Review*

When a defendant is tried for a sexual offense committed against a child, and notwithstanding Rules 404 and 405 of the Texas Rules of Evidence, "evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." Tex. Code Crim. Proc. art. 38.37 § 2(b). Subsections (a)(1) and (2) cover just about all sexual offenses against children. *Id*. § 2(a)(1)-(2). Even so, article 38.37 evidence is subject to exclusion under Rule 403. *Love v. State*, 706 S.W.3d 584, 613 (Tex. App.—Austin 2024, pet. ref'd). Under Rule 403, if the probative value of evidence is substantially outweighed by certain dangers, the evidence is inadmissible. *Gonzalez v. State*, 544 S.W.3d 363, 371 (Tex. Crim. App. 2018). The dangers identified in the rule are "unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403.

In reviewing a Rule 403 decision, an appellate court should "measure the trial court's ruling against the relevant criteria by which a Rule 403 decision is made," by considering

11

(1) how compellingly the extraneous evidence serves to make a fact of consequence more or less probable; (2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way"; (3) the time needed to develop the evidence; and (4) the force of the proponent's need for this evidence to prove a fact of consequence. *Perkins v. State*, 664 S.W.3d 209, 217 (Tex. Crim. App. 2022); *Colone v. State*, 573 S.W.3d 249, 266 (Tex. Crim. App. 2019). Rule 403 should be used "sparingly" to exclude relevant, otherwise admissible evidence that might bear upon the credibility of either the defendant or complainant in he said, [he] said" sexual assault cases. *Hammer v. State*, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009). We review a trial court's decision to admit evidence for an abuse of discretion. *Colone*, 573 S.W.3d at 263–64. "Under this standard, the trial court's decision to admit or exclude evidence will be upheld if it was within the 'zone of reasonable disagreement.'" *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018).

*Application*

Article 38.37

Bradshaw argues that the trial court erred in admitting the 2008 Oklahoma felony offense under article 38.37 because the conviction was remote—nearly ten years old—and was entirely dissimilar to the underlying acts of sexual abuse charged here. The Oklahoma conviction was based on his touching of a fifteen-year-old female's breast—conduct that cannot be "an act of sexual abuse" under the continuous sexual abuse of a young child offense. *See* Tex. Penal Code § 21.02(b)(2)(A) (requiring child victim be younger than 14), (c)(2) (excluding touching of breast of child from list of qualifying acts of sexual abuse). And he committed the non-similar conduct when he was nineteen, only four years older than the victim.

12

But the statute does not condition admission of the extraneous act on it being an identical or substantially similar sexual offense to that charged; it allows admission of a laundry list of extraneous offenses "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." And that laundry list includes section 21.11, indecency with a child under 17, and does so without limitation to the manner of commission and therefore includes indecency with a child under 17 by the touching of a child's breast. *Id.* § 21.11. The trial court did not err in finding the offense falls within the parameters of article 38.37 evidence, so we turn to Rule 403.

<u>Rule 403</u>

(1) How compelling is the relevant extraneous evidence?

Bradshaw argues that the relevance of the evidence was low given its remoteness and dissimilarity. We agree that remoteness can significantly lessen the probative value of extraneous-offense evidence. *See Brickley v. State*, 623 S.W.3d 68, 81 (Tex. App.—Austin 2021, pet. ref'd). Dissimilarity can too. But each are just factors to consider; no per se rule applies. *See Deggs v. State*, 646 S.W.3d 916, 925 (Tex. App.—Waco 2022, pet. ref'd). And the evidence, however remote and dissimilar, nevertheless bore on a subject of a genuine controversy—whether Parker had a sexual interest in adolescent children upon which he would act. *See Robisheaux v. State*, 483 S.W.3d 205, 220–21 (Tex. App.—Austin 2016, pet. ref'd) (extraneous-offense evidence relevant to whether defendant abused child); *Gaytan v. State*, 331 S.W.3d 218, 228 (Tex. App.—Austin 2011, pet. ref'd); *Deggs*, 646 S.W.3d at 925.

We find this factor slightly weighs in favor of admission.

13

(2) What potential does the other offense evidence have to impress the jury "in some irrational but nevertheless indelible way"?

Here, Bradshaw argues that the evidence was highly prejudicial because the State only presented the adjudicating judgment on the "lewd molestation," not the underlying facts, "depriving the jury of seeing the distinct differences between the facts of each case." Bradshaw also argues that the State's closing argument—that Bradshaw "pled guilty to the offense of lewd molestation, which is similar to indecency with a child in the state of Texas," which "happened on July 8th of 2013," and "was sent to prison" on the case—was misleading and unduly prejudicial because the offense date was January 6, 2008, and he initially was given a suspended sentence. The State misspoke; that is a fact. The judgment admitted into evidence reflects that Bradshaw originally pled guilty to the offense on September 2, 2008, received a suspended sentence, and then was revoked on July 8, 2013, and sent to prison. It appears from the prosecutor's statement on the record that defense counsel stipulated to the accuracy of the judgment and agreed to the admission of the judgment, instead of the whole pen packet. No State's witness testified about it. But the defense called C.B.'s mother and brought out the facts underlying the conviction. She testified that Bradshaw was 19 when the offense was allegedly committed; the alleged victim was 15; and she talked to the alleged victim and was told "it didn't happen."

Although sexually related bad acts and misconduct involving children are by their nature inflammatory, the plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial. It must be unfairly so. Tex. R. Evid. 403. Here the jury did hear the underlying facts, undercutting the prejudice from the State's misstatement that the offense was committed more recently. And even if the jury did not believe the mother's testimony about the alleged victim's recantation, the act was less egregious

14

than the ones for which he was on trial. *See Lozano v. State*, 706 S.W.3d 429, 445 (Tex. App.—Austin 2024, no pet.).

Given the evidence before the jury, the extraneous-offense evidence was unlikely to distract jurors or tempt them to make a decision on an emotional ground. We find this factor slightly weighs in favor of admission.

(3) How much time was needed to develop the evidence?

Bradshaw argues that the fact that the State spent no time developing the extraneous-offense evidence contributed to its prejudicial effect. But this factor looks to the time the proponent will need to develop the evidence during which the jury will be distracted from consideration of the indicted offense. *State v. Mechler*, 153 S.W.3d 435, 441 (Tex. Crim. App. 2005). Courts generally agree that where the presentation of extraneous-offense evidence consumes a large portion of the trial, this factor weighs in favor of exclusion. *See Newton v. State*, 301 S.W.3d 315, 321 (Tex. App.—Waco 2009, pet. ref'd) (collecting cases). Because the presentation of extraneous-offense evidence consumed a very small portion of the State's evidence at Bradshaw's trial, it is unlikely that the jury was distracted from consideration of the indicted offense. We find this factor weighs in favor of admission.

(4) Did the proponent need the evidence?

Bradshaw argues that the State did not need the evidence because, rather than being relevant, it was misleading. But we note that this was a "he said, he said" trial in which the jury was faced with two completely different versions of events, aided by little tangible evidence—the kind of case where Rule 403 exclusion should be used "sparingly." *Hammer*, 296 S.W.3d at 561–62.

Bradshaw attacked his son's credibility by eliciting testimony about C.B.'s various diagnoses; allegations that C.B. had sexually touched T.B., leading to T.B.'s removal from the shared bedroom during the summer of 2018; and the fact that C.B.'s drawing depicting Bradshaw's ejaculate was not supported by any forensic evidence.

We find this factor weighs in favor of admission.

(5) Was the probative value of the evidence substantially outweighed by the danger of unfair prejudice?

After measuring the trial court's ruling against the relevant criteria, we find that there was not a "clear disparity between the degree of prejudice of the offered evidence and its probative value." *Colone*, 573 S.W.3d at 263–64. Because the trial court's decision to admit the evidence was within the zone of reasonable disagreement, we overrule Bradshaw's complaint about the admission of the prior conviction under article 38.37 and Rule 403. *Beham*, 559 S.W.3d at 478.

## CONCLUSION

We overrule Bradshaw's four issues, modify the judgment to correct the listed enhancement subsection to Texas Penal Code subsection 12.42(c)(4), and affirm the judgment as modified.

16

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Kelly and Ellis

Modified and, as Modified, Affirmed

Filed:   March 31, 2026

Publish